IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ULTURA (LA) INC., et al.,[1] | ) | Case No. 14-12382 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

Related Docket Nos.: 15, 53, 122, and 170

## FINAL ORDER (I) APPROVING ULTURA (OCEANSIDE) INC.'S POSTPETITION FINANCING; (II) AUTHORIZING DEBTORS' USE OF CASH COLLATERAL; (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (IV) GRANTING ADEQUATE PROTECTION; AND (V) MODIFYING THE AUTOMATIC STAY

This *Final Order (I) Approving Ultura (Oceanside) Inc.'s Postpetition Financing; (II) Authorizing Debtors' Use of Cash Collateral; (III) Granting Liens and Providing Superpriority Administrative Expense Status; (IV) Granting Adequate Protection; and (V) Modifying the Automatic Stay* (this "Final Order") is entered upon the *Motion of Debtors for Orders (I) Approving Ultura (Oceanside) Inc.'s Postpetition Financing; (II) Authorizing Debtors' Use of Cash Collateral; (III) Granting Liens and Providing Superpriority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying Automatic Stay; and (VI) Scheduling a Final Hearing* (the "Financing Motion"), and upon the terms agreed between Ultura (Oceanside) Inc. ("Ultura Oceanside") and Ultura (LA) Inc. ("Ultura LA" and, together with Ultura Oceanside, the "Debtors") and UAC Finance, Inc. ("UAC").

Upon the terms of the Financing Motion, the stipulations, acknowledgements, and arguments of the Debtors and UAC, the statements of the parties and their respective counsel at

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers are: Ultura (LA) Inc. (9624); and Ultura (Oceanside) Inc. (6429). The mailing address for each of the Debtors is: 3605 Long Beach Blvd., Suite 201, Long Beach, CA 90807.

the hearings on the Financing Motion, and the record of these proceedings, the Court makes the following findings of fact and rulings of law:

I.    **The Debtors' Chapter 11 Cases**

A.    On October 20, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court (the "Chapter 11 Cases") under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors have operated their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On October 31, 2014, the office of the United States Trustee appointed an official committee of unsecured creditors under section 1102 of the Bankruptcy Code (the "Committee").[2]

B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.    On October 23, 2014, the Court entered the *Interim Order (I) Authorizing Debtors' Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Status; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; and (V) Scheduling a Final Hearing* [Docket No. 53] (the "First Interim Order").

D.    On November 14, 2014, the Court entered the *Second Interim Order (I) Authorizing Debtors' Use of Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Status; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; and (V) Scheduling a Final Hearing* [Docket No. 122] (the "Second Interim

---

[2]    On November 10, 2014, the United States Trustee filed an *Amended Notice of Appointment of Creditors Committee* [Docket No. 103] to reflect the resignation of Romaco, BV from the Committee as of November 7, 2014.

Order")

E.     On November 25, 2014, the Court entered the *Interim Order (I) Approving Ultura (Oceanside) Inc.'s Postpetition Financing; (II) Authorizing Debtors' Use of Cash Collateral; (III) Granting Liens and Providing Superpriority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (V) Scheduling a Final Hearing* [Docket No. 170] (the "Third Interim Order" and, collectively with the First Interim Order and Second Interim Order, the "Interim Orders").

F.     The Debtors served notice (the "Notice") of the Financing Motion and the hearing thereon (the "Final Hearing") pursuant to the First Interim Order, sections 102, 361, 362, and 363 of the Bankruptcy Code, Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), as applicable, by sending notice to, or in lieu thereof, to their counsel: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) counsel to UAC; (v) each of the Debtors' lists of twenty largest unsecured creditors; and (vi) all known parties that may be asserting a lien against any of the Debtors' assets.

G.     Under the circumstances, the Notice constitutes good and sufficient notice of the relief requested, and no further relief sought at the Final Hearing and the relief granted by this Final Order is necessary or shall be required.

## II.   The Loan

H.     Prior to the Petition Date, the Debtors and certain affiliates entered into a loan (the "Prepetition Loan") with Hercules Technology Growth Capital, Inc. ("Hercules")

evidenced by, among other things, the following documents, instruments, and agreements (collectively, the "Prepetition Loan Documents"): (i) Loan and Security Agreement dated as of September 29, 2013 by and between APTwater, Inc. (n/k/a Ultura Inc.)[3] and Hercules; (ii) Joinder Agreement dated as of September 9, 2013, by and between Rochem Membrane Systems, Inc. (n/k/a Ultura LA) and Hercules; (iii) Joinder Agreement dated as of November 15, 2013, by and between Sepro Membranes, Inc. (n/k/a Ultura Oceanside) and Hercules; (iv) Amendment to Loan dated as of July 4, 2014, by and among Ultura Inc., the Debtors, certain other affiliates of the Debtors, and Hercules; and (v) Second Amendment to Loan Agreement dated as of August 25, 2014, by and among Ultura Inc., the Debtors, certain other affiliates of the Debtors, and UAC Finance, Inc. (as successor to Hercules). The Loan and Security Agreement and the Joinder Agreements granted Hercules a security interest against substantially all assets of the Debtors, including but not limited to the Receivables, Equipment, Fixtures, General Intangibles, Inventory, Investment Property of the capital stock of any Foreign Subsidiary that constitutes a Permitted Investment, Deposit Accounts, Cash, Goods (each as defined in the Prepetition Loan Documents), and all other tangible and intangible personal property of the Debtors, including all Proceeds of the foregoing. The collateral described in this paragraph is referred to herein as the "Prepetition Collateral."

I.      Pursuant to that certain Loan Sale Agreement dated as of August 7, 2014 by and between Hercules and UAC, Hercules transferred to UAC all of its right, title, and interest in, to, and under the Prepetition Loan and the Prepetition Loan Documents.

J.      The Debtors stipulate and acknowledge that as of the Petition Date, pursuant to the Prepetition Loan Documents, UAC has validly perfected first priority security

---

[3]    Ultura Inc. is the parent company of Ultura (Switzerland) GmbH, which, in turn is the parent company of Rochem AG. Rochem AG is the parent company of Ultura Oceanside.

interests and liens against all of the Prepetition Collateral.

## III.    The Loan Claim

K.    The Debtors acknowledge that, as of the Petition Date, the amounts due and owing under the Prepetition Loan and Prepetition Loan Documents are not less than:

    i.    unpaid principal in the amount of $23,063,981;

    ii.    accrued but unpaid interest on the Prepetition Loan in the amount of $159,358, which interest continues to accrue from and after the Petition Date;[4] and

    iii.    accrued and unpaid fees and expenses of UAC and its professionals incurred through the Petition Date, including prepayment fees, end of term charges, and amendment fees (the "Prepetition Loan Expense Claim") of $1,108,566, plus unliquidated amounts of fees and expenses which have accrued prior to the Petition Date and amounts which will continue to accrue subsequent to the Petition Date. Such amounts, when liquidated, shall be added to the Loan Claim.

UAC reserves any and all rights to amend the Loan Claim and the Prepetition Loan Expense Claim and nothing herein shall be deemed to be a waiver of such rights.

## IV.    The Need for Debtor in Possession Financing and Global Settlement Agreement

L.    Ultura Oceanside determined that it will not be able to adequately finance its business operations by using only cash collateral subsequent to the week ending November 14, 2014 and that it requires access to additional financing.  To fund this shortfall, Ultura Oceanside solicited offers from 22 entities before the Petition Date to finance its operations during its bankruptcy case.  Although 8 of the 22 entities expressed an interest in providing postpetition financing, each declined the opportunity because they could not compete against UAC's below market terms.  In addition, UAC would not consent to priming liens and advised the Debtors that it would have argued that the Debtors could not have provided adequate protection for the proposed financing.  By contrast, Ultura LA determined that it is able to

---

[4]    The aggregate of (i) and (ii) are referred to herein as the "Loan Claim."

adequately finance it business operations throughout its chapter 11 case by using cash collateral and therefore does not need access to additional financing.

M.      Ultura Oceanside determined that its working capital needs can be met with a loan up to an aggregate amount of $1,245,048 to fund the expenses in the amounts and categories set forth on the budget attached hereto as **Exhibit A-1** (the "Oceanside Budget"). Ultura Oceanside shall use the proceeds of the DIP Loans (as defined below) solely for the purposes set forth in the Oceanside Budget subject to the terms contained herein ("Permissible Uses").

N.      Subsequent to the entry of the First Interim Order and Second Interim Order, the various constituencies had several negotiations to resolve the overall matters pertaining to the Chapter 11 Cases.  Ultimately the parties have agreed to a form of Global Settlement Agreement (the "Global Settlement Agreement") and the Debtors have filed their *Motion for Order Granting Joint Motion of the Debtors and Committee for an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving Global Settlement Agreement Between and Among the Debtors, the Committee, Dr. Hans J. Rohrer, UAC Finance, Inc., True North Venture Partners, L.P. and Those Other Parties to the Global Settlement Agreement* [Docket No. 141] (the "Global Settlement Motion").  Pursuant to the Global Settlement Agreement, a wind-down fund ("Wind-down Fund") will be established for the Debtors to pay the amounts incurred by the Debtors in administering and closing or dismissing the Chapter 11 Cases pursuant to the budget attached hereto as **Exhibit B** (the "Wind-down Budget").

O.      UAC has agreed, subject to the entry of an order acceptable to UAC in its sole discretion, to enter into (i) a debtor in possession credit facility with Ultura Oceanside up to

a maximum principal amount of $1,961,548, inclusive of those amounts under the Wind-down Budget for Ultura Oceanside and (ii) a debtor in possession facility with Ultura LA up to a maximum principal amount of $137,000 for the purposes of funding the Wind-down Budget (collectively, the "DIP Loans"). Such DIP Loans will be on a senior secured, superpriority basis and on the terms and conditions of this Final Order solely for Permissible Uses under the Oceanside Budget and the Wind-down Budget.

P.      Ultura Oceanside asserts that access to sufficient working capital and liquidity through the DIP Loans is vital to the preservation and maintenance of the going concern value of its business and assets and to assist in the ultimate conclusion of the Chapter 11 Cases. The Debtors assert that they are unable to obtain financing on more favorable terms from sources other than UAC under this Final Order and are unable to obtain adequate unsecured credit allowable under sections 364(c)(1) or 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors assert that they are also unable to obtain secured credit from sources other than UAC that would be allowable under sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code for the purposes set forth in this Final Order.

Q.      The terms of this Final Order have been negotiated in good faith and at arm's length between the Debtors and UAC, and are supported by the Committee, and all of Debtors' obligations and indebtedness arising under, in respect of or in connection with this Final Order, including without limitation, any and all amounts due under the DIP Loans or any related financing document, owed or owing to UAC by Ultura Oceanside or Ultura LA, as the case may be, in each instance, whether absolute or contingent, direct or indirect, secured or unsecured, due or not due, primary or secondary, joint or several, arising by operation of law or otherwise, and all interest and other charges thereon, including postpetition interest (collectively,

7

the "DIP Obligations" and, together with the Loan Claim and Prepetition Loan Expense Claim, the "Obligations"), shall be deemed to have been extended by UAC in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, the DIP Liens (as defined below) and the DIP Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise, or modification of the terms of the financing authorized by this Final Order.

R.    The terms of this Final Order are fair and commercially reasonable, reflect the Debtors' prudent exercise of business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.  Good cause has been shown for the entry of this Final Order.

## V.    Use of Cash Collateral and Need for Adequate Protection

S.    All amounts on deposit in the Debtors' accounts and the Debtors' cash constitute cash collateral (the "Cash Collateral") within the meaning of section 363 of the Bankruptcy Code.  UAC has a security interest in the Cash Collateral to secure the Debtors' obligations under the Prepetition Loan and the Prepetition Loan Documents.

T.    The Debtors have requested the use of UAC's Cash Collateral in connection with the Chapter 11 Cases to preserve the value of their businesses.  Pursuant to the Bankruptcy Code, the Debtors are required to provide adequate protection to UAC for the use of such Cash Collateral.  UAC has informed the Debtors and this Court that UAC does not consent to the use of Cash Collateral or the priming of its existing liens except upon the terms and conditions of this Final Order.

8

U.    Without the use of Cash Collateral, the Debtors would likely be required to cease operations; or, at a minimum, the Debtors' inability to use Cash Collateral would disrupt the operation of the Debtors as a going concern and would otherwise not be in the best interests of the Debtors, their estates, or their creditors.  In lieu of giving UAC relief from stay or attempting to obtain this Court's approval for use of Cash Collateral on a non-consensual basis, the Debtors wish to provide adequate protection of the liens and security interests of UAC in Cash Collateral and other Prepetition Collateral on the terms set forth in this Final Order, reflecting the agreement of the Debtors, UAC, and the Committee.

V.    UAC is willing to consent to the use of its Cash Collateral by the Debtors on the terms set forth in this Final Order, including that Cash Collateral is used by the respective Debtors solely in the amounts and categories set forth in the Oceanside Budget and the budget attached hereto as **Exhibit A-2** relating to Ultura LA (the "Ultura LA Budget" and, together with the Oceanside Budget, the "Budgets") subject to the terms contained herein.

W.    The terms of the proposed use of Cash Collateral and this Final Order are fair and commercially reasonable, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.  Good cause has been shown for the entry of this Final Order.

X.    To the extent any portion of the foregoing constitute rulings of law, they shall constitute this Court's rulings with respect to the matters so stated.

**NOW, THEREFORE, THE COURT HEREBY ORDERS AS FOLLOWS:**

1.    Disposition.  The Financing Motion is granted on a final basis on the terms set forth in this Final Order.  Any objections to the relief sought in the Financing Motion that

have not been previously resolved or withdrawn, and all reservations of rights contained therein, are overruled on the merits.

## DIP LOANS

2.    <u>DIP Loans</u>.  Ultura Oceanside is hereby authorized (i) to incur the DIP Loans incorporated in this Final Order up to a maximum principal amount of $1,961,548, and (ii) do all other things and execute and deliver all other documents, instruments, and agreements contemplated by this Final Order.  Ultura LA is hereby authorized (i) to incur, pursuant to the Wind-down Budget, the DIP Loans incorporated in this Final Order up to a maximum principal amount of $137,000 and (ii) do all other things and execute and deliver all other documents, instruments, and agreements contemplated by this Final Order.  Without limiting the foregoing, to the extent UAC deems necessary, the Debtors shall execute all documents reasonably required by UAC to evidence the terms and conditions of the proposed borrowing under this Final Order.

3.    <u>Repayment Obligation; Purpose</u>.    The Debtors are obligated to immediately repay the DIP Obligations upon the Termination Date (as defined below).  The proceeds of the DIP Loans shall be used for Permissible Uses, and subject to the terms and conditions set forth herein.

4.    <u>Requests for DIP Loans</u>.  So long as the Termination Date has not occurred and no Termination Event (as defined below) has occurred and is continuing, UAC shall make advances under the DIP Loans (exclusive of those amounts related to the Wind-down Fund) to Ultura Oceanside for payment of those items set forth in the Oceanside Budget subject to and in accordance with the terms, conditions, and limitations set forth in this Final Order.

5.    <u>Disbursements of DIP Loans</u>.  As a condition to funding each DIP Loan (other than those amounts relating to the Wind-down Fund), Ultura Oceanside shall deliver to

UAC a certificate (the "Borrowing Certificate") in the form attached hereto as **Exhibit C**, certifying: (i) no Termination Event has occurred or is continuing; (ii) the making of such DIP Loan shall not violate any requirement of law and shall not be enjoined temporarily, preliminarily, or permanently; (iii) the Final Order is in full force and effect; and (iv) the amount requested is consistent with the terms of the Oceanside Budget.  In addition to the foregoing, each DIP Loan shall be subject to the following advance mechanism:

    i.    All requests for advances shall be made on or before 5:00 p.m. (Central Time) the Thursday of each week for expenditures to be incurred in accordance with the Oceanside Budget for the following week; and

    ii.    Each Borrowing Certificate shall be signed by an authorized officer of Ultura Oceanside that further certifies that:

        a.    Such funds will be used for operating expenses of Ultura Oceanside;

        b.    There are insufficient funds on deposit in Ultura Oceanside's operating account available for such purpose;

        c.    Such expenditures have not been subject to any prior requisition or payment or reimbursement from any other source; and

        d.    Such amounts are anticipated to be expended in the week following the week in which the requisition is submitted and are consistent with the amounts and categories set forth in the Oceanside Budget.

    6.    Amendment or Extension of Budget(s).  The Debtors may, at any time, propose to UAC in writing (including by email) amended Budgets, for the period covered by the Budgets.  Any such proposed amendment or modification of the terms and conditions, or any amendment, modification, roll forward, or replacement of the Budgets themselves, shall be subject to the prior written consent of UAC.  At such time as the amended budgets become the

11

Budgets, the Debtors shall file copies of the Budgets with this Court and serve them upon all parties entitled to notice in accordance with Bankruptcy Rule 4001(b) and (c).

       7.      <u>Advance of Monies relating to Wind-down Fund</u>.  Upon approval of the Global Settlement Agreement and the consummation of the sale of the assets of Ultura Oceanside to UAC in accordance with the terms and conditions of that certain Asset Purchase Agreement dated December 3, 2014, by and between Ultura Oceanside and UAC (the "<u>Proposed Sale</u>"), UAC shall advance monies into the Wind-down Fund in the amount set forth on the Wind-down Budget.  Upon conclusion of the Chapter 11 Cases any amounts remaining in the Wind-down Fund after payment of those allowed costs and expenses set forth in the Wind-down Budget shall be promptly repaid to UAC without a further order of the Court.

       8.      <u>Interest</u>.  Subject to this paragraph, the DIP Loans shall accrue interest under this Final Order at a rate of 5% per annum.  From and after the occurrence of a Termination Event and until such time as any and all DIP Obligations are satisfied in full, the DIP Loans shall accrue interest at a rate of 7% per annum.  In addition, as and for consideration for providing the DIP Loans, Ultura Oceanside shall incur (i) a commitment fee of $15,000 to be accrued upon the first advance of a DIP Loan and (ii) an exit fee of $15,000 to be accrued upon a Termination Event.

       9.      <u>Liens</u>.  As security for the DIP Obligations, effective and perfected upon the date of entry of this Final Order, and without the necessity of the execution or recordation of filings by the Debtors or UAC of security agreements, pledge agreements, fixture filings, mortgages, hypothecs, deeds of trust, control agreements, financing statements or other similar documents, or the possession or control by UAC, the following security interests in and liens are hereby granted to UAC on and over all property and other assets of the Debtors and their estates

of every kind or type whatsoever, tangible, intangible, real, personal, or mixed, whether now owned or hereafter acquired or arising, and whether or not encumbered prior to the Petition Date, wherever located, up to the respective amounts owed under the DIP Loans: all property of the Debtors within the meaning of section 541 of the Bankruptcy Code; and all proceeds, rents, and products of the foregoing (collectively, all of the foregoing property and assets of the Debtors and/or their estates, the "Estate Property"), which Estate Property includes but is not limited to: (i) all accounts generated postpetition and proceeds thereof; (ii) all prepetition accounts and proceeds thereof, (iii) all intangibles; (iv) all real property, the improvements, fixtures thereon and all real property leases; (v) all other assets of the Debtors, including, but not limited to, inventory and equipment; (vi) any and all cash of the Debtors; (vii) all other property of the Debtors and their estates; and (viii) the proceeds of all the foregoing (clauses (i) through (viii) collectively, the "DIP Collateral").  For the avoidance of doubt, the term "DIP Collateral" shall include claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code, and any other avoidance actions under chapter 5 of the Bankruptcy Code.  All liens and security interests granted to UAC pursuant to this paragraph shall be defined as the "DIP Liens."  The DIP Liens granted pursuant to this paragraph shall be in addition to the superpriority administrative expense claims set forth herein, and, pursuant to sections 364(c) and 364(d), shall be valid, binding, continuing, enforceable, fully-perfected, senior and priming first priority senior security interest on all DIP Collateral that (a) will be and remain senior to UAC's liens relating to the Prepetition Loan; and (b) will otherwise constitute a first priority lien in all other DIP Collateral, subject only to (i) prior valid and perfected liens senior to UAC's liens existing as of the Petition Date ("Prior Senior Liens"), if any; and (ii) the Carve Out (as defined below).

13

10.    <u>DIP Superpriority Claims</u>.  In the event and to the extent that the DIP Collateral does not satisfy in full the DIP Obligations, then, subject to the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims against the Debtors with priority over any and all unpaid administrative expenses, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever (the "<u>DIP Superpriority Claims</u>"), including, without limitation, all other unpaid administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, any successor trustee or any creditor in the Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.  The DIP Superpriority Claims granted to UAC by this paragraph shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof.

11.    <u>No Liens or Encumbrances</u>.  Prior to payment in full of the DIP Loans and all DIP Obligations, the Debtors shall not sell, pledge, hypothecate, or otherwise encumber any DIP Collateral (and any such sale, pledge, hypothecation, or other transfer shall be void *ab initio*).

12.    <u>DIP Covenants</u>.  The Debtors shall observe all covenants in this Final Order and those terms and conditions of the Loan Agreement set forth on **Exhibit D** attached hereto and incorporated herein by reference at all times prior to and after the Termination Date.

DOCS_SF:86395.9

13.    <u>Effectiveness of DIP Loans</u>.  This Final Order constitutes a valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with the terms of this Final Order for all purposes during the Chapter 11 Cases, any subsequently converted cases of the Debtors under chapter 7 of the Bankruptcy Code or after the dismissal of the Chapter 11 Cases.  No obligation, payment, transfer or grant of security under this Final Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim.

14.    <u>Payment to UAC</u>.  All payments or proceeds remitted to UAC pursuant to the provisions of this Final Order or otherwise shall be received by UAC, free and clear of all claims, charges, assessments or other liabilities including, without limitation, any such claim or charge arising out of or based on section 506(c) or 552(b), whether directly or indirectly, all of which are waived by the Debtors.  Upon such payments, such amounts paid shall be deemed fully earned, indefeasibly paid, and non-refundable.

## AUTHORIZATION TO USE CASH COLLATERAL

15.    <u>Authorization to Use Cash Collateral</u>.  The Debtors are authorized to use, as cash collateral, the Cash Collateral until the occurrence of a Termination Event (as defined below), but only on the terms of this Final Order.  Subject to the preceding sentence, such use of Cash Collateral by each Debtor shall be limited solely to the categories of expenses listed in their respective Budgets.  Further, such use of Cash Collateral shall be limited solely to payment of expenses in the amounts and at the times listed in the respective Budgets; *provided, however,*

15

each of the Debtors shall be permitted to exceed the amounts set forth in their respective Budgets to pay categories of expenses listed on their respective Budgets to the extent such a variance does not constitute a Termination Event described in paragraph 24 of this Final Order.

16.    Replacement Lien.  As further adequate protection for any diminution in the value of Cash Collateral and other Prepetition Collateral resulting from the use by the Debtors of Cash Collateral after the Petition Date and the priming of UAC's liens against the Prepetition Collateral ("Diminution"), UAC shall continue to have a valid, perfected, and enforceable continuing replacement lien and security interest (the "Replacement Lien") in all assets of the Debtors existing on or after the Petition Date of the same type as the Prepetition Collateral, together with the proceeds, rents, products, and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, enforceability, and priority of the liens and security interests of UAC as of the Petition Date (the "Postpetition Collateral").  The Replacement Lien shall be subject to only (i) the DIP Liens; (ii) Prior Senior Liens; and (iii) the Carve Out (as such term is defined herein).

17.    Adequate Protection Lien.  As additional adequate protection for any Diminution, UAC shall have a valid, perfected, and enforceable continuing security interest (the "Adequate Protection Lien") in all of the assets of the Debtors of any kind or nature whatsoever within the meaning of section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof, exclusive of causes of action under chapter 5 of the Bankruptcy Code (other than section 549 as made applicable by section 550) (the "Supplemental Collateral" and, collectively with the Postpetition Collateral, the "Collateral").  The Adequate Protection Lien shall be subject to only (i) the DIP Liens; (ii) the Prior Senior Liens; (iii) the Carve Out; and (iv) the Replacement Lien.

16

18.    <u>Cash Collateral Superpriority Claims</u>.  As additional adequate protection for any Diminution, UAC shall have a superpriority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code, with recourse to and payable from any and all assets of the estates of the Debtors (the "<u>Cash Collateral Superpriority Claim</u>").  The Cash Collateral Superpriority Claim shall be subject to only (i) DIP Liens; (ii) Prior Senior Liens; (iii) the Carve Out; (iv) the Replacement Lien; and the (v) the Adequate Protection Lien, and shall otherwise have priority over any and all administrative expenses, diminution claims, and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, any successor trustee or any creditor in these Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, and all proceeds thereof.

**PROVISIONS COMMON TO DIP LOANS
AND USE OF CASH COLLATERAL**

19.    <u>Limitation on Use of the DIP Loans and Cash Collateral</u>.  The Debtors hereby waive any and all claims and causes of action against UAC and its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, directly related to DIP Loans, DIP Obligations, the Prepetition Loan, the Prepetition Loan Documents, and this Final Order or the negotiation of the terms thereof.  No proceeds of Cash Collateral or any DIP Loans

17

shall be used for the purpose of: (i) objecting to, or contesting in any manner, or raising any defense to, the validity, amount, extent, perfection, priority, or enforceability of the Prepetition Loan, the Prepetition Loan Documents, the Prepetition Collateral, the Loan Claim, the DIP Loans or any liens or security interests with respect thereto, or any other rights or interests of UAC therein; (ii) asserting any claims or defenses or causes of action against UAC or its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors including, without limitation, any actions under chapter 5 of the Bankruptcy Code, including with respect to payments made pursuant to this Final Order, the Interim Orders, or the Prepetition Loan Documents; (iii) seeking to modify any of the rights granted to UAC hereunder; (iv) paying any amounts not included in the Budgets (subject to the variances set forth herein); (v) paying any amounts not on account of claims arising before the Petition Date, except to the extent provided for in the Budgets and approved by the Court; or (vi) other than postpetition administrative intercompany claims as set forth in the Budgets, paying any amounts for or on behalf of any entity that is not Ultura Oceanside or Ultura LA.

20.    <u>No Further Action Required</u>.    The approval of this Final Order by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability, and perfection of the DIP Liens, Replacement Lien, and Adequate Protection Lien granted to UAC, whether or not UAC elects to file or record financing statements, any other documents which may otherwise be required under federal or state law in any jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence, or perfect such liens under applicable law; *provided, however*, that upon the request of UAC, the Debtors shall execute such other documents as may be reasonably requested to evidence and perfect such liens, and UAC may, in its sole discretion (but shall not be required to), file a certified copy of this Final Order in any

18

filing or recording office in any jurisdiction in which the Debtors have real or personal property, and the Debtors are authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon UAC's reasonable request, and such filing or recording shall be accepted and shall constitute further evidence of perfection of UAC's liens and security interests. No obligation, payment, transfer, or grant of security under this Final Order shall be stayed (other than by court order in an appeal from this Final Order), restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any otherwise applicable state law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

21.    <u>Financial Information</u>. As further security for the DIP Obligations and as additional protection for the use of UAC's Cash Collateral, the Debtors shall allow UAC and its professionals and designees reasonable access, during normal business hours, to the premises of the Debtors in order to conduct analyses and/or audits of the Prepetition Collateral, the DIP Collateral, and the Collateral, and shall otherwise reasonably cooperate in providing any other financial information requested by UAC for this purpose. From and after the entry of this Final Order, the Debtors shall provide to UAC on Wednesday of each week (commencing with the first week after the Petition Date), a weekly report (the "<u>Weekly Budget Report</u>") certified by the chief financial officers of the Debtors and in the same form as the Budgets indicating all receipts received and disbursements made by the Debtors in the week ending the prior Friday compared to the Budgets and detailing any variances for any budget line item of more than 5% and at least $10,000 from the expenditures and receipts in the Budgets. The Debtors, their professionals, and management shall be available weekly (subject to reasonable scheduling conflicts) for a telephonic conference call with UAC and/or its professionals to discuss the status of the Chapter 11 Cases, the results of operations and other matters pertaining to the facilities of the Debtors.

DOCS_SF:86395.9

The Debtors shall provide to UAC such other reports and information as UAC may reasonably request from time to time.

22.    <u>Compliance With Prepetition Loan Documents</u>.    As further adequate protection against Diminution, and as further consideration for the DIP Loan, the Debtors shall comply with those terms and provisions of the Prepetition Loan Documents set forth on **Exhibit D** attached hereto (the "<u>Adequate Protection Covenants</u>").    The requirements of this Final Order shall be in addition to, and not in substitution for, the Adequate Protection Covenants.

23.    <u>Bankruptcy Transaction Milestones</u>.    As further adequate protection against Diminution, and as further consideration for the DIP Loans and the use of Cash Collateral, the Debtors shall comply with the following milestones (the "<u>Milestones</u>"):

    i.    On or before December 4, 2014, the Court shall hold a hearing on the Proposed Sale and the Global Settlement Motion;

    ii.    On or before December 4, 2014, the Court shall have entered an order approving the Proposed Sale to UAC and shall have entered an order approving the Global Settlement Agreement; and

    iii.    On or before December 12, 2014, the sale of the Acquired Assets to UAC shall have been consummated to the extent UAC waives the requirement that the sale order become a final order; however, if UAC does not waive such requirement, then such date shall be December 19, 2014.

24.    <u>Termination of Use of Cash Collateral With Notice</u>.    A Termination Event shall be deemed to have occurred five (5) business days after receipt of written notice sent by UAC to the Debtors, their counsel, the Committee, the Committee's counsel, and the U.S. Trustee of the occurrence of any of the following:

    i.    the payment or incurrence by either of the Debtors of any expense of a type not set forth in their respective Budgets;

    ii.    the use of Cash Collateral or the proceeds of DIP Loans for the payment for or on behalf of any entity other than the Debtors except on account of a postpetition intercompany claim entitled to

administrative priority and set forth in the Budgets;

iii.   the payment by either of the Debtors of any expenses (exclusive of professional fees which shall only be paid at the budgeted amounts) that would cause the aggregate expenditures to exceed one hundred ten percent (110%) of the total budgeted expenses for that same period (a "Measuring Period"). This "Variance" shall be measured, on a rolling four week basis; *provided, however*, that, for purposes of calculating such variances, (i) the first Measuring Period shall be the one week after the Petition Date and the first week of the respective Budgets, (ii) the second Measuring Period shall be the first two weeks after the Petition Date and the first two weeks of the respective Budgets, (iii) the third Measuring Period shall be the first three weeks after the Petition Date and the first three weeks of the respective Budgets, and (iv) the fourth Measuring Period shall be the first four weeks after the Petition Date and the first four weeks of the respective Budgets. Any budgeted expenditures not paid in a particular budget period may be paid during a subsequent period and, for the purpose of calculating the rolling four week variances set forth above, the respective Budget will be revised to move such expenditures to the later period. Expenditures may be paid in an earlier period in the reasonable discretion of the Debtors, in which event, the respective Budget shall be deemed amended to move the expenditure into the week of the actual expenditure for the purpose of calculating rolling four week variances set forth above. The Debtors will provide a written explanation in reasonable detail explaining the amount of and the reason for the prepayment or delay in payment.

iv.   the failure of either of the Debtors to pay, within ten days of the applicable due date, all undisputed administrative expenses in full in accordance with their terms as provided for in their respective Budgets;

v.    the failure of either of the Debtors to timely pay all fees due under 28 U.S.C. § 1930; and

vi.   the failure of either of the Debtors to comply with, keep, observe, or perform any of its agreements or undertakings under this Final Order, exclusive of meeting the Milestones set forth in paragraph 23.

Unless, prior to the expiration of the five (5) business day period described in this paragraph, the Debtors have cured the Termination Event(s) specified in UAC's notice, or obtained an order of this Court, on notice to and with the opportunity to be heard by UAC, that no such Termination Event has occurred, the authority of Ultura Oceanside to draw upon the DIP Loans or the

Debtors to use Cash Collateral hereunder shall terminate without further action of any kind and upon expiration of such five (5) business day period, all amounts owed under the DIP Loans shall be accelerated and immediately due and payable, UAC shall be permitted to exercise any and all remedies hereunder, under this Final Order or applicable law without further notice or court order, and UAC shall be automatically relieved of any further stay under section 362 of the Bankruptcy Code, or other restriction on enforcement of its prepetition and postpetition liens and security interests in the Collateral to collect the amounts due with respect to the DIP Obligations (the "Termination Date").

      25.     Termination of Use of Cash Collateral or DIP Loans Without Prior Notice. The authority of Ultura Oceanside to draw upon the DIP Loans and the Debtors to use the proceeds of Cash Collateral hereunder shall terminate without any further action by this Court and a Termination Event shall occur, without prior notice, upon the occurrence of any of the following (also a "Termination Event"):

i.      Either of the Chapter 11 Cases are dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

ii.      the earlier of (y) the date of the entry of an order of this Court appointing a chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for either of the Debtors; or (z) the date either of the Debtors file a motion, application, or other pleading consenting to or acquiescing in any such appointment;

iii.      this Court suspends either of the Chapter 11 Cases under section 305 of the Bankruptcy Code;

iv.      this Final Order becomes stayed, reversed, vacated, amended, or otherwise modified in any respect without the prior written consent of UAC;

v.      an order is entered in the either of the Chapter 11 Cases over the objection of UAC approving financing pursuant to section 364 that would grant an additional security interest or a lien on any DIP Collateral or Collateral, or granting a superpriority administrative

claim that is equal or superior to the superpriority administrative claims granted to UAC under this Final Order;

vi.    an adversary proceeding or contested matter is commenced challenging the amount, validity, enforceability, priority, or extent of UAC's liens, security interests, or claims; or

vii.    the failure of Ultura Oceanside to meet the Milestones set forth in paragraph 23.

Upon the occurrence of a Termination Event described in this paragraph, Ultura Oceanside's authority to draw upon the DIP Loans and the Debtors to use Cash Collateral hereunder shall automatically terminate and UAC shall be automatically relieved of any further stay under section 362 of the Bankruptcy Code, or other restriction on enforcement of its prepetition and postpetition liens and security interests in the DIP Collateral and/or the Collateral to collect the amounts due with respect to the DIP Obligations (also a "Termination Date"). For the avoidance of doubt, the authorization to draw DIP Loans and the Debtors' use of cash collateral shall terminate no later than December 13, 2015; provided, however, upon the Effective Date of the Settlement Agreement (as defined therein) UAC shall have no further obligation to fund the DIP Loans (other than advancing the monies into the Wind-down Fund in accordance with the terms contained herein) and the Debtors shall be authorized to continue to use cash without any further restrictions imposed by this Final Order.

26.    Release. The Debtors hereby waive, release, and discharge UAC and its affiliates, agents, attorneys, professionals, officers, directors and employees (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Loan and the Prepetition Loan Documents, any aspect of the prepetition relationship between UAC (including any of its predecessors in interest) and the Debtors, and any other acts or omissions by UAC in connection with any of the Prepetition Loan Documents or UAC's prepetition relationship with the Debtors. Further, the

DOCS_SF:86395.9

Debtors waive any and all rights to object to or contest the amount of either of the Loan Claim or Prepetition Loan Expense Claim or UAC's security interest in the Prepetition Collateral and agree that all such claims and security interests have been duly perfected and are in all respects valid and enforceable first priority security interests and liens.

27.    <u>Failure of Adequate Protection</u>.  Nothing herein shall constitute a waiver, release or modification of the rights of UAC to assert a claim under sections 364(c) and 507(b) of the Bankruptcy Code.

28.    <u>Deemed Request for Stay Relief</u>.  This Final Order shall be deemed to constitute a request by UAC for relief from the automatic stay with respect to the Prepetition Collateral, for adequate protection for the use of Cash Collateral as of the Petition Date, and shall suffice for all purposes of section 507(b) of the Bankruptcy Code.

29.    <u>No Charge on Collateral; Carve Out</u>.  In partial consideration of the Debtors' acknowledgement of the debt due and owing and the Debtors' waiver of any claims under section 506(c) of the Bankruptcy Code, UAC consents to the payment of certain amounts which shall be superior in all instances to the liens and claims of UAC and all other parties (the "Carve Out").  For purposes hereof, the "Carve Out" means (a) the amounts set forth under the respective Budgets for the Professional Fees and Case Administration Fees[5] (as such terms are defined in the Budgets) up to the date of a Termination Event (to the extent such amounts have not otherwise been funded into the Trust Account, as defined below), plus (b) the amounts funded into the Wind-down Fund in accordance with the terms contained herein, plus (c) the fees and expenses due and payable to the Debtors' proposed investment banker, Wedbush Securities Inc., pursuant to the terms of section 2 of the engagement letter attached to the *Debtors'*

---

[5]    Case Administration Fees include the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of this Court.

*Application for Entry of an Order Authorizing the Employment and Retention of Wedbush Securities Inc. as Investment Bankers Nunc Pro Tunc to the Petition Date*, plus (d) the amount of $700,000 paid by UAC to the Debtors' estates in accordance with the Global Settlement Agreement to the extent approved by the Court.   So long as a Termination Event has not occurred, the Debtors shall (i) fund the amount set forth in the respective Budgets for Professional Fees[6] and Case Administration Fees (excluding amounts budgeted for Investment Banker Fees/Expenses) weekly to a trust account held by the Debtors' counsel (the "Trust Account") and (ii) be permitted to pay the Professional Fees allowed and payable under sections 328, 330, 331, and 503 of the Bankruptcy Code in accordance with the respective Budgets.   This Final Order shall be a conclusive and binding determination on all parties that, except for the Carve Out, no costs or expenses of administration shall be imposed against UAC, the Prepetition Collateral, the DIP Collateral, or the Collateral under sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

30.   <u>Modification of Stay</u>.   The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit UAC to: (i) receive payments to be made by the Debtors to UAC, and (ii) take any action specifically authorized or contemplated by this Final Order.   Any of the aforementioned actions may be taken without further order of this Court.

31.   <u>Preservation of Rights</u>.   If any or all of the provisions of this Final Order are, at any time, modified, vacated, or stayed, such stay, modification or vacation shall not affect the validity, extent, priority, and enforceability of any lien, priority, or other benefit conferred under this Final Order prior to such stay, modification, or vacation.

---

[6]   DIP Lender's attorneys' fees and expenses will not be funded into the Trust Account.

32.    <u>Binding Effect</u>.  This Final Order shall be binding on all creditors and parties in interest in these Chapter 11 Cases, including, but not limited to, the Debtors and any successors thereto, any chapter 11 or chapter 7 trustee that is appointed or elected in either of the Chapter 11 Cases, and the Committee.

33.    <u>Reservation of Rights</u>.  Except as provided in this Final Order or the order approving the Global Settlement Motion, neither the Debtors nor UAC waive any of their rights under the Bankruptcy Code, any applicable law, or the Prepetition Loan Documents, including, without limitation, the right of the Debtors or UAC at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, or the right of the Debtors or UAC to exercise any of their rights and remedies under the Bankruptcy Code at any time.

34.    <u>Further Relief</u>.  Nothing herein shall (i) preclude UAC from seeking any other relief that it may deem appropriate, including relief from the automatic stay, or (ii) prevent UAC from asserting at some later time that its liens and security interests in the Prepetition Collateral are not being adequately protected.

35.    <u>No Control</u>.  UAC shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "managing agent," or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtors, notwithstanding its consent to this Final Order and extending financial accommodations of any type, kind, or nature under this Final Order.

DOCS_SF:86395.9

36.    <u>No Third Party Beneficiaries</u>.  No rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect, or incidental beneficiary except for the Released Parties.

37.    <u>Notices</u>.    All  notices,  requests,  demands,  waivers  and  other communications required or permitted to be given under this Final Order shall be in writing and shall be deemed to have been duly given if (i) delivered personally or (ii) sent by email with a next-day or overnight mail or delivery (collectively, the "<u>Notice Parties</u>"):

    i.    If to the Debtors to:

> Jonathan Wright
> General Counsel and Chief Compliance Officer
> 3605 Long Beach Blvd., Suite 201
> Long Beach, CA 90807
> Telephone:    562-661-4999
> Email:        jwright@ulturawater.com

with a copy sent contemporaneously by email to:

> Pachulski Stang Ziehl & Jones, LLP
> Attn: Jeffrey N. Pomerantz, Debra Grassgreen, and Joshua Fried
> 10100 Santa Monica Blvd., 13th Floor
> Los Angeles, CA 90067
> Telephone:    310-277-6910
> E-mail:        jpomerantz@pszjlaw.com
>               dgrassgreen@pszjlaw.com
>               jfried@pszjlaw.com

    ii.    If to UAC to:

> UAC Finance, Inc.
> Attention:  Michael J. Ahearn and Matthew S. Ahearn
> c/o True North Venture Partners, LP
> 205 N. Michigan Avenue
> Chicago, IL 60601
> Telephone:    312-574-1700
> Email:        mike.ahearn@truenorthvp.com

with a copy sent contemporaneously by email to:

> Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
> Attn: Daniel S. Bleck and William W. Kannel
> One Financial Center

DOCS_SF:86395.9

Boston, MA 02111
Telephone:    617-542-6000
Email:        dsbleck@mintz.com
              bkannel@mintz.com

iii.    If to the Committee:

Sills Cummis & Gross P.C.
Attn: Andrew Sherman and Boris I. Mankovetskiy
One Riverfront Plaza
Newark, NJ 07102
Telephone:    212-643-6982
Email:        asherman@sillscummis.com
              bmankovetskiy@sillscummis.com

38.    <u>Effectiveness</u>.  The rights and obligations of the parties under this Final Order shall be effective and enforceable upon entry of this Final Order.  This Final Order shall be deemed effective immediately and, for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not apply hereto.  If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, extent, priority, or enforceability of any obligations incurred prior to the actual receipt of written notice by UAC of the effective date of such reversal, modification, vacatur, or stay or (ii) the validity, extent, or enforceability of the liens and claims granted hereunder.

Dated:  December 4, 2014
        Wilmington, Delaware

HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

DOCS_SF:86395.9