**Exhibit A**

## GLOBAL SETTLEMENT AGREEMENT

This global settlement agreement ("Agreement") is made and entered into as of December ___, 2014, by and among Ultura (Oceanside) Inc. ("Ultura Oceanside"), Ultura (LA) Inc. ("Ultura LA" and collectively with Ultura Oceanside, the "Debtors"), the Official Committee of Unsecured Creditors appointed in the Debtors' cases (the "UCC"), UAC Finance, Inc. ("UAC"), True North Venture Partners, L.P. ("True North"), Dr. Hans J. Rohrer ("Rohrer"), those entities and/or individuals affiliated with Rohrer as set forth on Schedule 1 attached hereto ("Rohrer Related Entities"), Ultura, Inc. ("Ultura") and Rochem AG and those entities and/or subsidiaries relating to Ultura and Rochem AG as set forth on Schedule 2 attached hereto (the "Ultura Related Entities"). Each of the foregoing may be referred to in this Agreement as a "Party", and collectively as the "Parties".

### RECITALS

On October 20, 2014, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 11 of the title 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases remain pending as the jointly administered Chapter 11 Case No. 14-12382(KG) (the "Bankruptcy Cases").

Among other pleadings filed in the Bankruptcy Cases was Ultura (Oceanside) Inc.'s Motion for Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Substantially All Assets of Ultura (Oceanside) Inc. Outside the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f), and 363(m); (C) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (D) Granting Related Relief (the "Sale Motion"). Pursuant to the Sale Motion, Ultura Oceanside sought to sell substantially all of its assets (the "Oceanside Assets") to UAC in accordance with a certain Asset Purchase Agreement by and between Ultura Oceanside and UAC (or its designee) dated as of October 20, 2014 (the "APA"). As part of the Sale Motion, Ultura Oceanside also filed its Motion for Order:  (A) Approving Bid Procedures for the Sale of Substantially All Assets of Ultura (Oceanside) Inc. Outside the Ordinary Course of Business; (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Approving Payment of a Break-Up Fee; and (D) Granting Related Relief ("Bid Procedures Motion").

In accordance with the APA in consideration for the purchase of the Oceanside Assets, UAC agreed to (i) credit bid a portion of its pre-petition secured claim; (ii) credit bid the amount outstanding under a proposed debtor-in-possession financing facility between Ultura Oceanside and UAC; and (iii) assume the claims of all known undisputed trade creditors of Ultura Oceanside up to a certain cap.

Subsequent to the filing of the Sale Motion and Bid Procedures Motion, the UCC was appointed by the Office of the United States Trustee and thereafter the UCC raised certain issues concerning the sale process, the Sale Motion, the Bid Procedures Motion, and the underlying credit bid by UAC.

After numerous discussions relating to the proposed sale, the UAC credit bid, and the validity and priority of various claims asserted against the respective Debtors, the Parties have reached a global settlement and compromise of the various issues relating to these Bankruptcy Cases and the claims of the various Parties, upon the terms and conditions contained herein.

NOW THEREFORE, in consideration of the promises and the mutual agreements contained herein, the Parties agree as follows:

ARTICLE 1

INCORPORATION OF RECITALS

The Recitals set forth above are true and correct and are hereby incorporated herein by this reference.

ARTICLE 2

DEFINITIONS

In this Agreement, the following capitalized terms shall have the meanings assigned to them below or in the preamble, recitals or within this Agreement:

"Bankruptcy Code" means Title 11 of the United States Code.

"Business Day" means any day that is not a Saturday, Sunday, or any other day on which the Bankruptcy Court is permitted or required to be closed.

"Cash Collateral Motion" means the Motion of the Debtors for Order (I) Approving Ultura (Oceanside) Inc.'s Postpetition Financing; (II) Authorizing Debtors Use of Cash Collateral; (III) Granting Liens and Providing Superpriority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying Automatic Stay; and (VI) Scheduling a Final Hearing.

"Effective Date" means the first Business Day on or after the earliest of (a) the closing of the sale under the Oceanside APA and the conditions precedent to the effectiveness of this Agreement have been satisfied, or (b) the Settlement Order is a Final Order and the conditions precedent set forth herein have been satisfied.

"Exchange Note Documents" means that certain APTWater, Inc. Secured Note Exchange Agreement dated as of June 14, 2013 by and between APTWater, Inc. (a/k/a Ultura, Inc.) and True North, and all documents related thereto.

"Final " means, with respect to an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to subject matter, that such order has not been reversed, stayed, modified, or amended, and that the time to appeal or seek certiorari with respect to such order has expired and no appeal or petition for certiorari has been timely taken, or that in the event that any appeal that has been taken or any petition for certiorari that has been or may be filed with respect to such order, there has not been a stay of such order, or such appeal or petition for certiorari has been withdrawn or dismissed or has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

2

"KEIP Motion" means the motion for Approval of Key Employee Incentive Plan and Authorizing Payments Thereunder filed by Ultura Oceanside in the Bankruptcy Cases.

"Oceanside APA" means that certain Asset Purchase Agreement by and between Ultura Oceanside and UAC (or its designee) dated as of December 3, 2014, providing for the sale of the Oceanside Assets to UAC or its designee. A copy of the Oceanside APA is attached hereto as Exhibit A and is incorporated herein by reference.

"Sale Motion" means the motion to be filed by Ultura Oceanside in the Bankruptcy Cases for an order authorizing, *inter alia*, the private sale of the Oceanside Assets to UAC which motion shall be in form and substance substantially similar to the form attached hereto as Exhibit B and incorporated herein by reference.

"Sale Order" means an order entered in the form attached hereto as Exhibit C or in such form as may be otherwise agreed to by UAC approving the Oceanside APA and the sale of the Oceanside Assets to UAC.

"Seller Notes" means (i) that certain Promissory Note dated November 8, 2011 by Rochem Membrane Systems, Inc. (n/k/a Ultura (LA)) and made payable to Dr. Hans J. Rohrer; and (ii) that certain Promissory Note dated November 8, 2011 by Rochem AG and made payable to Dr. Hans J. Rohrer.

"Settlement Motion" means the motion to be filed by the Debtors and UCC in the Bankruptcy Cases pursuant to Bankruptcy Rule 9019 for an order authorizing, *inter alia*, entry into this Agreement which motion shall be in form and substance substantially similar to the form attached hereto as Exhibit D and incorporated herein by reference.

"Settlement Order" means an order entered in the form attached hereto as Exhibit E or in such form as may be otherwise agreed by the Parties approving the Agreement.

"Share Purchase Agreements" means (i) that certain Share Purchase Agreement dated as of August 23, 2011 between Rohrer and Ultura relating to the purchase of shares of Rochem AG as amended by that certain First Amendment to Share Purchase Agreement dated as of November 3, 2011 between Rohrer, Ultura and Ultura (Switzerland) GmbH (AM); and (ii) that certain Share Purchase Agreement dated as of November 8, 2011 between Rohrer and Ultura relating to the purchase of shares of Ultura LA, and all documents and contracts related thereto.

"UAC Claim" means the claim of UAC against each of the Debtors in an amount not less than $24,331,905.00 as of the Petition Date, with interest and fees continuing to accrue from and after the Petition Date, plus the amount advanced by UAC pursuant to Section 3.04(b) herein.

"UAC Loan Documents" means that certain (i) Loan and Security Agreement dated as of September 29, 2013 by and between APTwater, Inc. (n/k/a Ultura Inc.) and Hercules Technology Growth Capital, Inc. ("Hercules"); (ii) Joinder Agreement dated as of September 9, 2013 by and between Rochem Membrane Systems, Inc. (n/k/a Ultura LA) and Hercules; (iii) Joinder Agreement dated as of November 15, 2013 by and between Sepro Membranes, Inc. (n/k/a Ultura Oceanside) and Hercules; (iv) Amendment to Loan Agreement dated as of July 4, 2014 by and among Ultura, Inc., the Debtors, certain other affiliates of the Debtors and Hercules; and (v)

3

Second Amendment to Loan Agreement dated as of August 25, 2014 by and among Ultura, Inc., the Debtors, certain other affiliates of the Debtors and UAC, and all documents related thereto.

ARTICLE 3

SETTLEMENT CONSIDERATION AND COMPROMISE

Section 3.01. *Settlement and Compromise*. Subject to and expressly conditioned upon the entry by the Bankruptcy Court of the Settlement Order approving this Agreement as provided in Article 4 and the occurrence of the Effective Date, this Agreement settles and resolves all disputes among the Parties. Except as the Parties may otherwise agree, all provisions of this Agreement and the agreements that are Exhibits hereto are central, non-severable terms of this Agreement including, but not limited to, the sale of the Oceanside Assets to UAC pursuant to the terms of the Oceanside APA.

Section 3.02. *Allowed Bankruptcy Claim*. UAC shall have an allowed secured claim against each of Ultura Oceanside and Ultura LA in their respective Bankruptcy Cases in the full amount of the UAC Claim, which shall not be subject to offset, recoupment, deduction, counterclaim or objection, of any kind or nature, by any party (the "Allowed Secured Claim"). The Allowed Secured Claim shall be treated in accordance with the terms and conditions of this Agreement.

Section 3.03. *Settlement Consideration*.

(a)    Payment to the Debtors' Estates. In partial consideration of the settlement among the Parties, on the Effective Date UAC shall pay the aggregate sum of $700,000 (the "Cash Consideration") to the UCC Winddown Account (as defined below) and assume all known undisputed trade claims of Ultura Oceanside and Ultura LA as set forth herein.

(b)    UCC Winddown Account. UAC shall pay the Cash Consideration to counsel for the Committee to be held in a client trust account (the "UCC Winddown Account") which shall be used for the payment of: (a) allowed administrative and priority claims in the Debtors' cases (including, but not limited to, the allowed professional fees and expenses of the attorneys and financial advisors of the Committee, but excluding the Winddown Costs (as defined below)) and (b) holders of allowed general unsecured claims against either of the Debtors on a *pro rata* basis. In the event that there are funds remaining in the UCC Winddown Account after payment of administrative, priority and general unsecured claims[1] (exclusive of any Winddown Costs), then any residual (up to $250,000) shall be paid to Dr. Rohrer on account of his asserted claims against Ultura LA.

(c)    Dismissal of Swiss Litigation. Upon payment to Dr. Rohrer of the Rohrer Payment as defined in letter (f) hereunder, Dr. Rohrer and Ultura (Switzerland) GmbH (formerly APT-Rochem Holdings GmbH) shall jointly and consentaneously apply to the district court of Zurich (Bezirksgericht Zürich) to terminate the court proceedings in the file No. CG13082

---

[1] To the extent that the Committee incurs professional fees in connection with the resolution of general unsecured claims, those fees will be paid from the UCC Winddown Account prior to the distribution to general unsecured creditors on a *pro rata* basis.

pursuant to an out of court settlement (Abschreibung zufolge Vergleichs). The litigants shall pay the court fees in equal parts and bear their own costs and attorney's fees in the subject matter and apply for a respective decision of the court. The litigants shall execute and file a dismissal of the court proceedings in the form attached hereto as <u>Exhibit I</u>.

(d)    <u>Assumption of Liabilities</u>. On the Effective Date, UAC shall assume those trade creditor claims, as set forth on Schedule 3 attached hereto and incorporated herein by reference, in the amounts not to exceed in the aggregate those amounts set forth on Schedule 3.

(e)    <u>Ultura LA</u>.  The assets of Ultura LA are not sold to UAC.   All of Ultura LA's assets shall remain with the Ultura LA bankruptcy estate for distribution to its creditors.

(f)    <u>Payment to Rohrer and Release of Claims by Rohrer and the Rohrer Related Entities</u>.  UAC shall, as of the Effective Date, cause a payment of $2,250,000 to be made to Rohrer (the "<u>Rohrer Payment</u>").  The Rohrer Payment shall be made by wire transfer.  The Rohrer Payment shall be in full and complete satisfaction of any and all claims that Rohrer or the Rohrer Related Entities have against the other Parties to this Agreement, whether known or unknown, of every kind and description whatsoever, specifically including but not limited to Rohrer's demand for €2,238,661.67 under the Share Purchase Agreements related to German taxes.  Additionally, Rohrer and the Rohrer Related Entities forever release, discharge, waive and abandon any and all claims, whether direct or representative, rights, demands, suits, matters, liens, mortgages, security interests, pledges, encumbrances, privileges, priorities, issues or causes of action, whether known or unknown, whether based on international, federal, state, or local statutory or common law, rule or regulation, by contract or in equity, and whether directly, representatively or in any other capacity, that it may have as of the date of the entry of the Settlement Order against the Releasing Parties or the respective properties or assets.  Upon the receipt of the Rohrer Payment, Rohrer and the Rohrer Related Entities shall execute and deliver to the Parties an acknowledgement of satisfaction in the form attached hereto as <u>Exhibit F</u> acknowledging the full and complete satisfaction of all claims against the Debtors, Rochem AG and the Ultura Related Entities including, but not limited to, those obligations arising under the Seller Notes and the Share Purchase Agreements.  Notwithstanding anything to the contrary herein, the undisputed trade claim of Romaco BV against Ultura LA set forth on Schedule 3 is not released and shall be assumed by UAC pursuant to Section 3.03(d) hereof.

Section 3.04.    <u>*Funding of the Debtors' Estates*</u>.

(a)    <u>Final Order for Use of Cash Collateral</u>.  Each of the Debtors, UAC and the UCC shall support entry of a Final Order approving the Cash Collateral Motion in the form attached hereto as <u>Exhibit G</u> and incorporated herein by reference which Cash Collateral Motion shall fund Ultura Oceanside's ordinary course expenses and charges incurred post-petition and prior to the closing of the sale contemplated by the Oceanside APA pursuant to a mutually agreeable budget.

(b)    <u>Advance by UAC of Winddown Costs</u>.  Attached hereto as <u>Exhibit H</u> and incorporated herein by reference is a schedule detailing the winddown costs and expenses projected to be incurred by the Debtors in winding down and otherwise closing the Chapter 11 Cases (the "<u>Winddown Costs</u>") (the "<u>Winddown Amount</u>") to Ultura Oceanside and Ultura LA

(allocated in the amounts as set forth on Exhibit D) to be held by the Debtors' counsel in a separate interest bearing account (the "Winddown Fund"). The Winddown Amount shall be used by the Debtors to pay the amounts incurred by the Debtors in administering and closing the Chapter 11 Cases. Other than the advance of the Winddown Amount neither UAC nor True North nor any affiliated entities thereof shall be obligated to advance any further funds to the Debtors or the bankruptcy estates for the payment of the Winddown Costs. Upon conclusion or dismissal of the Chapter 11 Cases any amounts remaining in the Winddown Fund after payment of those Winddown Costs set forth on Exhibit H shall be promptly be repaid to UAC.

Section 3.05.  *Sale of Assets of the Debtors*.

(a)    On the date of the filing of the Settlement Motion, as described herein, the Debtors shall also file the Sale Motion pursuant to which Ultura Oceanside shall sell the Oceanside assets to UAC in accordance with the terms of the Ultura Oceanside APA, pursuant to a private sale, not subject to any further counteroffers nor an auction.

(b)    As partial consideration for the purchase of the Oceanside Assets and in accordance with the Oceanside APA, (i) UAC agrees to (A) assume those trade creditor claims, as set forth on Schedule 3 attached hereto and incorporated herein by reference, in the amounts not to exceed in the aggregate those amounts set forth on Schedule 3, and (B) credit bid a portion of its Allowed Secured Claim, and (ii) the Cash Consideration will be applied against the purchase price.

Section 3.06.  *Release Among the Parties*. Except as otherwise provided in this Agreement, effective upon satisfaction of the contingencies set forth in Section 4.01 below and upon the Effective Date, the Parties to this Agreement, each on behalf of itself, and each of its present and former successors, transferees, partners, principals, officers, directors, employees, agents, and attorneys (collectively the "Releasing Parties"), forever releases, discharges, waives and abandons any and all claims, whether direct or representative, rights, demands, suits, matters, liens, mortgages, security interests, pledges, encumbrances, privileges, priorities, issues or causes of action, whether known or unknown, whether based on international, federal, state, or local statutory or common law, rule or regulation, by contract or in equity, and whether directly, representatively or in any other capacity, that it may have as of the date of the entry of the Settlement Order against any of the other Releasing Parties or the respective properties or assets, arising from, in any way based upon, or in any way related to the following: the negotiation of or entering into this Agreement; the UAC Claim; the UAC Loan Documents; the Share Purchase Agreements; the Seller Notes; the Exchange Note Documents; all contractual arrangements and relationships by and among Rohrer and the Rohrer Related Entities and the other Parties (collectively, the "Released Claims"). For the purposes of this Section 3.06, notwithstanding the foregoing, the Released Claims shall not include (i) any claims arising under, brought under or to enforce the terms of this Agreement; (ii) the claims of UAC against Ultura Oceanside relating to the Allowed Secured Claim solely for the purposes of credit bidding a portion of the Allowed Secured Claim against the purchase price provided for in the Oceanside APA, provided that any portion of the Allowed Secured Claim not used for the credit bid shall be deemed fully and irrevocably released solely as to each of the Debtors; or (iii) the claims of UAC and True North against Ultura and the other obligated parties (other than the Debtors) arising under or related to the Exchange Note Documents and the UAC Loan Documents; or (iv) any claims of Ultura and

6

the Ultura Related Entities that they may have with respect to their officers, directors, principals, employees, agents, professionals and/or attorneys who were not serving in those positions as of the Petition Date, all of which claims are specifically and expressly reserved and preserved, provided however, that any such claims against the Rohrer Related Entities are not reserved and preserved hereby.

Section 3.07. *Release Of Debtors' Current Directors and Officers*. Except as otherwise provided in this Agreement, effective upon satisfaction of the contingencies set forth in Section 4.01 below and upon the Effective Date, the Releasing Parties forever release, discharge, waive and abandon any and all claims, (whether direct, derivative, representative), rights, demands, suits, matters, liens, mortgages, security interests, pledges, encumbrances, privileges, priorities, issues or causes of action, whether known or unknown, whether based on international, federal, state, or local statutory or common law, rule or regulation, by contract or in equity, and whether directly, derivatively, representatively or in any other capacity, that it may have as of the date of the entry of the Settlement Order against any of the Debtors' current officers, directors, principals, employees, agents, professionals and/or attorneys, of any kind or nature whatsoever, whether known or unknown.

Section 3.08. *California Civil Code Section 1542 Waiver*. The releases given in Section 3.03(f), Section 3.06, and 3.07 above, under are intended to shall operate as general releases. Each of the Parties has read and fully understands the provisions of California Civil Code section 1542 which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Understanding the language of California Civil Code section 1542 and being fully apprised of the legal import of such statute, each of the Releasing Parties does expressly waive any and all rights and/or remedies provided by such statute should this statute be deemed to apply to the matters released herein. Each of the Releasing Parties expressly acknowledges that they may in the future discover facts in addition to or different from those they now know or believe to be true. Nevertheless, each of the Releasing Parties fully, finally, and forever releases any and all claims whether or not hidden or excluded, known or unknown, without regard to the subsequent discovery or existence of different or additional facts.

Section 3.09. Limited Scope of Releases. For the avoidance of doubt, nothing in this Settlement Agreement or the releases in sections 3.06 and 3.07 hereof is intended to release or have any effect on claims held by persons or entities which are not Parties to this agreement including the constituent members of the Committee who are not parties hereto.

Section 3.10. *Execution of Additional Documents*, The Parties agree, upon the Effective Date, that they shall each execute such additional documents as is reasonably necessary to

7

effectuate the terms of this Agreement.  Without limiting the foregoing, upon the Effective Date, the Parties shall cause to be executed and filed a dismissal of the Swiss litigation as described in Section 3.03(c) in the form attached hereto as Exhibit I.

ARTICLE 4
SETTLEMENT ORDER

Section 4.01.  *Conditions Precedent*.  The effectiveness of this Agreement shall be conditioned. upon the entry by the Bankruptcy Court of the Settlement Order and Sale Order, the satisfaction of the conditions stated herein, and the occurrence of the Effective Date.  The following conditions must be satisfied prior to the occurrence of the Effective Date:

(a)     Entry of the Sale Order on or before December 4, 2014 approving the sale of the Oceanside Assets to UAC or its designee in accordance with the terms and conditions of the Oceanside APA.

(b)     Entry of the Settlement Order on or before December 4, 2014.

(c)     Entry of a Final order approving the Cash Collateral Motion on or before December 4, 2014, with such Final order being in form and substance acceptable to UAC.

(d)     Each of the conditions precedent contained in the Oceanside APA shall have been satisfied in accordance with the terms and conditions therein.

(e)     Consummation of the sale of the Oceanside Assets to UAC or its designee in accordance with the terms and conditions of the Oceanside APA on or before December 12, 2014.

(f)     Upon the entry of the Settlement Order, the Releases contained in Section 3.06 hereof shall be binding and enforceable against the Parties.

Section 4.02.  *Settlement Order and Sale Order Findings*.  Unless otherwise agreed in writing by the Parties, the Settlement Order and Sale Order shall, at a minimum, approve the terms of this Agreement and the sale of the Oceanside Assets to UAC, and shall contain, in substance, the following findings and/or orders:

(a)     The manner in which notice of the Settlement Motion and Sale Motion were provided to all parties entitled to such notice was adequate, appropriate, reasonable and sufficient for all purposes and is approved;

(b)     The compromises and settlement set forth in this Agreement are fair and reasonable to, and are in the best interest of, the Debtors and their creditors;

(c)     The Settlement Motion is approved;

(d)     The Sale Motion is approved;

8

(e)    The Settlement Order and Agreement shall be binding on the Debtors, UAC, True North, Rohrer, the Rohrer Related Parties, Ultura, and Ultura Related Entities;

(f)    A finding under Section 363(m) of the Bankruptcy Code that UAC purchased the Oceanside Assets in good faith, such sale is free and clear of liens, claims, encumbrances and interests (except for those claims expressly assumed in the Ultura Oceanside APA) of any party, and the transfer of the Oceanside Assets to UAC for the consideration set forth in the Oceanside APA represents fair consideration and reasonably equivalent value.

(g)    Each of the Parties hereto is authorized to enter into such other agreements documents as are necessary to effectuate the settlement to which it is a party;

(h)    The releases contained in this Agreements are approved and shall be effective as of the Effective Date; and

(i)    Upon the Effective Date, each of the Releasing Parties shall be deemed to have released and to be prevented from asserting, pursuing or prosecuting in any manner and in any forum any and all Released Claims against any of the Releasing Parties including, but not limited to, claims arising from the negotiation of or entry into this Agreement, subject to the terms contained herein.

Section 4.03. _Support for Settlement and Sales_. From and after the date of the execution of this Agreement, each of the Parties shall support the approval by the Bankruptcy Court of the settlement and compromise as set forth in this Agreement, the proposed sale to UAC in accordance with the terms and conditions of the Sale Motion and the Oceanside APA and the entry of the Final order approving the Cash Collateral Motion.

Section 4.04. _Denial of Settlement Motion for Failure to Satisfy the Conditions Precedent_. If (i) the Bankruptcy Court shall deny the Settlement Motion or refuse to enter the Settlement Order in a form acceptable to the Parties, (ii) the Settlement Order is not entered by December 4, 2014, (iii) the Sale Order is not entered on or before December 4, 2014 in form and substance acceptable to UAC, or (iv) the Effective Date does not occur on or before December 22, 2014, then this Agreement shall be null and void and all Parties shall be released from their obligations hereunder and shall be returned to their respective legal positions as of the time immediately prior to execution of this Agreement. Provided that the Parties have used good faith efforts to seek the entry of such Settlement Order and the Sale Order and to support the entry of the Settlement Order and the Sale Order, then no Party shall have any liability to any other Party and shall be deemed to have waived the right to assert any claim on account of the inability to obtain entry of the Settlement Order or the Sale Order.

ARTICLE 5
REPRESENTATIONS

Section 5.01. Each of the Parties other than the Debtors represent and warrant as of the Effective Date that it has been duly authorized to execute and deliver this Agreement and any other agreements contemplated by this Agreement to which it is or will be a party, and, assuming proper authorization, execution and delivery by the designated counterparties to such agreements, and based upon entry of the Settlement Order and the provisions thereof as

9

contemplated herein, this Agreement shall constitute, and the other agreements contemplated by this Agreement to which it is or shall be a party shall constitute, the legal, valid and binding obligation of each such Party, enforceable against each such Party in accordance with their terms, except as the enforceability thereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights and remedies of creditors. Each of the foregoing parties further represent and warrant that, as of the date hereof and the Effective Date, it is the sole and lawful owner of all right, title and interest in and to all of the claims and other interests contemplated to be released by it pursuant to this Agreement. It has not assigned, transferred or otherwise disposed of any such claim or interest or portion thereof that it has or ever had, to any person, including any of its affiliates, in any manner, including by way of operation of law or otherwise.

Section 5.02. Each of the Debtors represent and warrant as of the Effective Date that it has been duly authorized to execute this Agreement and any other agreements contemplated by this Agreement to which it is or will be a party, and, assuming proper authorization, execution and delivery by the designated counterparties to such agreements, and based upon entry of the Settlement Order and the provisions thereof as contemplated herein, this Agreement constitutes, and the other agreements contemplated by this Agreement to which it is or will be a party will constitute, the legal, valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms except as the enforceability thereof may be limited, in proceedings other than the present Bankruptcy Cases, by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights and remedies of creditors. Each Debtor further represents and warrants to the other Parties that it is the sole and lawful owner of all right, title and interest in and to all of the claims contemplated to be released by it pursuant to this Agreement. It has not assigned, transferred or otherwise disposed of any such claim or interest or portion thereof that it has or ever had, to any person in any manner, including by way of operation of law or otherwise.

Section 5.03. *Cooperation*. UAC shall reasonably cooperate with the Debtors and the Committee in connection with the wind down of the bankruptcy estates as provided in Section 3.16 of the Oceanside APA.

ARTICLE 6
MISCELLANEOUS

Section 6.01. *Notices*. All notices and other communications under this Agreement, shall be deemed duly given (a) when delivered personally or by prepaid overnight courier, with a record of receipt, (b) when received, if mailed by certified mail, return receipt requested, or (c) the day of transmission, if sent by facsimile to the following facsimile numbers or by electronic mail to the following e-mail addresses, during regular business hours or the day after transmission, if sent after regular business hours (with a copy promptly sent by prepaid overnight courier with record of receipt or by certified mail, return receipt requested), to the Parties at the following addresses or e-mail addresses (or to such other address, facsimile number or e-mail address as a Party may have specified by notice given to the other Parties pursuant to this provision):

10

<u>In the case of the Debtors</u>:

Grant Lyon
Interim Chief Executive Officer
Ultura (Oceanside) Inc.
Ultura LA Inc.
57 West 57th Street
New York, NY 10019

<u>With a copy to</u>:

Jeffrey N. Pomerantz, Esq.
Debra I. Grassgreen, Esq.
Pachulski, Stang, Ziehl & Jones LLP
10100 Santa Monica Boulevard
13th Floor
Los Angeles, CA 90067-4003

<u>If to UAC and True North Partners</u>:

Michael J. Ahearn
Matthew S. Ahearn
True North Venture Partners, L.P.
205 N. Michigan Avenue
Chicago, IL 60601

<u>With a copy to</u>:

William W. Kannel, Esq.
Daniel S. Bleck, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111

<u>If to UCC</u>:

Andrew Sherman, Esq.
Boris I. Mankovetskiy, Esq.
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102

<u>If to Ultura, Inc.</u>

Michael W. Carmel
Chair, Restructuring Committee
80 E. Columbus Ave.
Phoenix, AZ 85012
Michael@mcarmellaw.com

<u>With a copy to:</u>

Thomas J. Salerno, Esq.
Gordon Silver
One East Washington Street
Suite 400
Phoenix, AZ  85004
tsalerno@gordonsilver.com

<u>If to Rohrer or the Rohrer Related Entities:</u>

Michael Busenkell, Esq.
Gellert Scali Busenkell & Brown, LLC
913 Market Street, 10th Floor
Wilmington, DE 19801

<u>If to Rochem AG:</u>

Ted Gavin
Gavin Solomonese
919 N. Market Street, Suite 600
Wilmington, DE 19801

<u>With a copy to:</u>

Teresa Currier, Esq.
Saul Ewing LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801

Section 6.02. <u>*No Consequential or Punitive Damages*</u>.  The Parties shall only be liable hereunder for direct or compensatory damages.  No Party shall, under any circumstance, be liable hereunder to any other Party for any indirect, consequential, exemplary, special, incidental, punitive or moral damages or lost revenue, lost income, lost profits, cost of capital or loss of business reputation or opportunity claimed by such other Party under the terms of or due to any breach of this Agreement.

12

Section 6.03. *Further Assurances*. Each of the Parties hereto agrees to promptly execute such additional documents or instruments to the extent such additional documents or instruments do not conflict with or are not inconsistent with the terms of this Agreement, as are necessary or desirable to evidence the settlements, releases and other transactions set forth in this Agreement. From time to time, as and when requested by a party hereto, any other party hereto shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other action (subject to any limitations set forth in this Agreement), as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by this Agreement, all at the sole cost and expense of the requesting party.

Section 6.04. *Disputes*. As of the Effective Date, except as otherwise provided for in this Agreement and to enforce the Parties' obligations hereunder, each Party agrees that it shall not commence or proceed with any litigation against any other Party related to the subject matter of this Agreement, nor shall it take any action inconsistent with the terms of this Agreement. The Parties hereto agree and consent to the exclusive jurisdiction of Bankruptcy Court to hear claims arising from the enforcement of this Agreement, the other agreements contemplated herein, the Settlement Order and the Sale Order, so long as Ultura Oceanside's bankruptcy shall remain pending. If such bankruptcy case shall no longer be pending, then jurisdiction shall be in both the state and federal courts located within the State of Delaware.

Section 6.05. *No Concessions or Admissions*. It is expressly understood that no Party to this Agreement concedes any liability of any kind whatsoever and that this settlement is made as a compromise and voluntary agreement in order to dispose of matters of contention and possible contention between the Parties hereto. All negotiations, proceedings, agreements, documents and statements made in connection with this Agreement shall not be deemed or construed to be evidence or an admission by any party of any act, matter or proposition and shall not be used in any manner or for any purpose in any action or proceeding.

Section 6.06. *No Inducement; Construction*. Each of the Parties hereby states to the others that except as expressly set forth herein, no one has made any representations of any kind to induce them to enter into this Agreement, and that it was entered into freely because they believed it to be in their best interests. This Agreement shall be deemed drafted by all Parties hereto and any ambiguity herein shall not be construed against any party solely by virtue of its participation in the drafting process. Each of the Parties has had advice of counsel of its own choosing in connection with this Agreement.

Section 6.07. *Amendment*. No variation or amendment of this Agreement shall be valid unless it is in writing and signed by or on behalf of all Parties to this Agreement.

Section 6.08. *Waivers*. No failure or delay by any party in exercising any right or remedy provided by law under or pursuant to this Agreement shall impair such right or remedy or be construed as a waiver or variation of it or preclude its exercise at any subsequent time, and no single or partial exercise of any such right or remedy shall preclude any other or further exercise of it or the exercise of any other right or remedy.

13

Section 6.09. *Counterparts*. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.

Section 6.10. *Governing Law*. This Agreement shall be interpreted, construed and governed according to the laws of the State of Delaware without regard to its conflicts of laws rules.

Section 6.11. *Acknowledgments*. The Parties acknowledge that this Agreement is being entered into in good faith, is the product of arms-length negotiations, and that good and sufficient consideration has been provided for all of the obligations set forth herein.

Section 6.12. *Binding Effect*. This Agreement shall be binding upon the Parties, their successors, assigns, and/or transferees.

Section 6.13. *Captions and Headings*. The Article and Section captions and the headings set forth herein are for reference purposes only, and shall not in any way affect the meaning or interpretation of this Agreement

Section 6.14. *Specific Performance*. The Parties acknowledge and agree that a breach of the provisions of this Agreement by any Party would cause irreparable damage to the other Parties and that such other Parties would not have an adequate remedy at law for such damage. Therefore, the obligations of the Parties set forth in this Agreement shall be enforceable by a decree of specific performance issued by any court of competent jurisdiction, and appropriate injunctive relief may be applied for and granted in connection therewith. Such remedies shall, however, be cumulative and not exclusive and shall be in addition to any other remedies that the Parties may have under this Agreement or otherwise.

Section 6.15. *No Third Party Beneficiary*. Except as expressly provided herein, no other entity is intended to be granted third party beneficiary status under this Agreement.

Section 6.16. *Non-Severability*. Except as all Parties may otherwise agree in writing, all provisions of this Agreement are essential, non-severable terms of this Agreement.

Section 6.17. *Prevailing Parties*. If any Party commences an action against another Party to enforce the terms of this Agreement or the Settlement Order, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs, whether or not such action is brought to judgment and whether incurred before or after the filing of any such action, and a Party's right to the foregoing shall not merge with but shall survive the entry of judgment.

Section 6.18. *Acceptance of Facsimile or Electronic Mail Signatures*. Delivery of an executed signature page of this Agreement by facsimile transmission or electronic mail (in pdf or compatible format) shall be as effective as delivery of a manually executed counterpart hereof.

[Remainder of Page Intentionally Left Blank]

14

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their respective authorized officers as of the date first written above.

ULTURA (OCEANSIDE) INC.

By:_____
Print Name:_____
Title:_____

ULTURA (LA) INC.

By:_____
Print Name:_____
Title:_____

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By:_____
Print Name:_____
Title:_____

UAC FINANCE, INC.

By:_____
Print Name:_____
Title:_____

TRUE NORTH VENTURES PARTNERS, L.P.

By its General Partner

Print Name:_____
Title:_____

15

DR. HANS J. ROHRER


_____

*Hans J. Rohrer*

ULTURA, INC.


By:_____
Print Name:_____
Title:_____


ROCHEM AG


By:_____
Print Name:_____
Title:_____

THOMAS BOVE


_____

*Thomas Bove*

FLUID SEPARATION SYSTEMS SA


By:_____
Print Name:_____
Title:_____


WILHELM HEINE


_____

*Wilhelm Heine*

16

ROCHEM GROUP AG


By:_____
Print Name:_____
Title:_____


ROCHEM TECHNICAL SERVICES AG


By:_____
Print Name:_____
Title:_____

ROCHEM TECHNICAL SERVICE (EUROPE)
LTD.


By:_____
Print Name:_____
Title:_____


R.T.S. ROCHEM TECHNICAL SERVICES
GMBH


By:_____
Print Name:_____
Title:_____

ROMACO B.V.


By:_____
Print Name:_____
Title:_____

17

ULTURA INC.


By:_____
Print Name:_____
Title:_____


ULTURA (SWITZERLAND) GMBH


By:_____
Print Name:_____
Title:_____


ULTURA LIMITED


By:_____
Print Name:_____
Title:_____


ULTURA SRL


By:_____
Print Name:_____
Title:_____


ULTURA GMBH


By:_____
Print Name:_____
Title:_____


ULTURA SALES GMBH


By:_____
Print Name:_____
Title:_____

18

ULTURA RO PROPERTY GMBH


By:_____
Print Name:_____
Title:_____

ULTURA LLC
By its Sole Member, Ultura Inc.


By:_____
Print Name:_____
Title:_____


ULTURA ASIA PACIFIC PTE LIMITED
By its Sole Shareholder, Ultura Inc.


By:_____
Print Name:_____
Title:_____

19

SCHEDULE 1
(Rohrer Related Entities)

Thomas Bove
Fluid Separation Systems SA
Wilhelm Heine
Rochem Group AG
Rochem Technical Services AG
Rochem Technical Service (Europe) Ltd.
R.T.S. Rochem Technical Services GmbH
Hans J. Rohrer
Romaco B.V.

<u>SCHEDULE 2</u>
(Ultura Related Entities)

Ultura Inc
Ultura (LA) Inc.
Ultura (Oceanside) Inc.
Ultura (Switzerland) GmbH
Ultura Limited
Ultura Srl
Ultura GmbH
Ultura Sales GmbH
Ultura RO Property GmbH
Rochem AG
Ultura LLC
Ultura Asia Pacific Pte Limited

DOCS_SF:86627.5

**Exhibit B**

## GLOBAL SETTLEMENT AGREEMENT

This global settlement agreement ("Agreement") is made and entered into as of November December ____, 2014, by and among Ultura (Oceanside) Inc. ("Ultura Oceanside"), Ultura (LA) Inc. ("Ultura LA" and collectively with Ultura Oceanside, the "Debtors"), the Official Committee of Unsecured Creditors appointed in the Debtors' cases (the "UCC"), UAC Finance, Inc. ("UAC"), True North Venture Partners, L.P. ("True North"), Dr. Hans J. Rohrer ("Rohrer"), those entities and/or individuals affiliated with Rohrer as set forth on Schedule 1 attached hereto ("Rohrer Related Entities"), Ultura, Inc. ("Ultura") and Rochem AG and those entities and/or subsidiaries relating to Ultura and Rochem AG as set forth on Schedule 2 attached hereto (the "Ultura Related Entities"). Each of the foregoing may be referred to in this Agreement as a "Party", and collectively as the "Parties".

## RECITALS

On October 20, 2014, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 11 of the title 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases remain pending as the jointly administered Chapter 11 Case No. 14-12382(KG) (the "Bankruptcy Cases").

Among other pleadings filed in the Bankruptcy Cases was Ultura (Oceanside) Inc.'s Motion for Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Substantially All Assets of Ultura (Oceanside) Inc. Outside the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f), and 363(m); (C) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (D) Granting Related Relief (the "Sale Motion"). Pursuant to the Sale Motion, Ultura Oceanside sought to sell substantially all of its assets (the "Oceanside Assets") to UAC in accordance with a certain Asset Purchase Agreement by and between Ultura Oceanside and UAC (or its designee) dated as of October 20, 2014 (the "APA"). As part of the Sale Motion, Ultura Oceanside also filed its Motion for Order: (A) Approving Bid Procedures for the Sale of Substantially All Assets of Ultura (Oceanside) Inc. Outside the Ordinary Course of Business; (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Approving Payment of a Break-Up Fee; and (D) Granting Related Relief ("Bid Procedures Motion").

In accordance with the APA in consideration for the purchase of the Oceanside Assets, UAC agreed to (i) credit bid a portion of its pre-petition secured claim; (ii) credit bid the amount outstanding under a proposed debtor-in-possession financing facility between Ultura Oceanside and UAC; and (iii) assume the claims of all known undisputed trade creditors of Ultura Oceanside up to a certain cap.

Subsequent to the filing of the Sale Motion and Bid Procedures Motion, the UCC was appointed by the Office of the United States Trustee and thereafter the UCC raised certain issues concerning the sale process, the Sale Motion, the Bid Procedures Motion, and the underlying credit bid by UAC.

After numerous discussions relating to the proposed sale, the UAC credit bid, and the validity and priority of various claims asserted against the respective Debtors, the Parties have reached a global settlement and compromise of the various issues relating to these Bankruptcy Cases and the claims of the various Parties, upon the terms and conditions contained herein.

NOW THEREFORE, in consideration of the promises and the mutual agreements contained herein, the Parties agree as follows:

## ARTICLE 1
### INCORPORATION OF RECITALS

The Recitals set forth above are true and correct and are hereby incorporated herein by this reference.

## ARTICLE 2
### DEFINITIONS

In this Agreement, the following capitalized terms shall have the meanings assigned to them below or in the preamble, recitals or within this Agreement:

"Bankruptcy Code" means Title 11 of the United States Code.

"Business Day" means any day that is not a Saturday, Sunday, or any other day on which the Bankruptcy Court is permitted or required to be closed.

"Cash Collateral Motion" means the Motion of the Debtors for Order (I) Approving Ultura (Oceanside) Inc.'s Postpetition Financing; (II) Authorizing Debtors Use of Cash Collateral; (III) Granting Liens and Providing Superpriority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying Automatic Stay; and (VI) Scheduling a Final Hearing.

"Effective Date" means the first Business Day on or after the earliest of (a) the closing of the sale under the Oceanside APA and the conditions precedent to the effectiveness of this Agreement have been satisfied, or (b) the Settlement Order is a Final Order and the conditions precedent set forth herein have been satisfied.

"Exchange Note Documents" means that certain APTWater, Inc. Secured Note Exchange Agreement dated as of June 14, 2013 by and between APTWater, Inc. (a/k/a Ultura, Inc.) and True North, and all documents related thereto.

"Final " means, with respect to an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to subject matter, that such order has not been reversed, stayed, modified, or amended, and that the time to appeal or seek certiorari with respect to such order has expired and no appeal or petition for certiorari has been timely taken, or that in the event that any appeal that has been taken or any petition for certiorari that has been or may be filed with respect to such order, there has not been a stay of such order, or such appeal or petition for certiorari has been withdrawn or dismissed or has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

2

"KEIP Motion" means the motion for Approval of Key Employee Incentive Plan and Authorizing Payments Thereunder filed by Ultura Oceanside in the Bankruptcy Cases.

"Oceanside APA" means that certain Asset Purchase Agreement by and between Ultura Oceanside and UAC (or its designee) dated as of ~~November~~ December 3, 2014, providing for the sale of the Oceanside Assets to UAC or its designee. A copy of the Oceanside APA is attached hereto as Exhibit A and is incorporated herein by reference.

"Sale Motion" means the motion to be filed by Ultura Oceanside in the Bankruptcy Cases for an order authorizing, *inter alia*, the private sale of the Oceanside Assets to UAC which motion shall be in form and substance substantially similar to the form attached hereto as Exhibit B and incorporated herein by reference.

"Sale Order" means an order entered in the form attached hereto as Exhibit C or in such form as may be otherwise agreed to by UAC approving the Oceanside APA and the sale of the Oceanside Assets to UAC.

"Seller Notes" means (i) that certain Promissory Note dated November 8, 2011 by Rochem Membrane Systems, Inc. (n/k/a Ultura (LA)) and made payable to Dr. Hans J. Rohrer; and (ii) that certain Promissory Note dated November 8, 2011 by Rochem AG and made payable to Dr. Hans J. Rohrer.

"Settlement Motion" means the motion to be filed by the Debtors and UCC in the Bankruptcy Cases pursuant to Bankruptcy Rule 9019 for an order authorizing, *inter alia*, entry into this Agreement which motion shall be in form and substance substantially similar to the form attached hereto as Exhibit D and incorporated herein by reference.

"Settlement Order" means an order entered in the form attached hereto as Exhibit E or in such form as may be otherwise agreed by the Parties approving the Agreement.

"Share Purchase Agreements" means (i) that certain Share Purchase Agreement dated as of August 23, 2011 between Rohrer and Ultura relating to the purchase of shares of Rochem AG as amended by that certain First Amendment to Share Purchase Agreement dated as of November 3, 2011 between Rohrer, Ultura and Ultura (Switzerland) GmbH (AM); and (ii) that certain Share Purchase Agreement dated as of November 8, 2011 between Rohrer and Ultura relating to the purchase of shares of Ultura LA, and all documents and contracts related thereto.

"UAC Claim" means the claim of UAC against each of the Debtors in an amount not less than $24,331,905.00 as of the Petition Date, with interest and fees continuing to accrue from and after the Petition Date, plus the amount advanced by UAC pursuant to Section 3.04(b) herein.

"UAC Loan Documents" means that certain (i) Loan and Security Agreement dated as of September 29, 2013 by and between APTwater, Inc. (n/k/a Ultura Inc.) and Hercules Technology Growth Capital, Inc. ("Hercules"); (ii) Joinder Agreement dated as of September 9, 2013 by and between Rochem Membrane Systems, Inc. (n/k/a Ultura LA) and Hercules; (iii) Joinder Agreement dated as of November 15, 2013 by and between Sepro Membranes, Inc. (n/k/a Ultura Oceanside) and Hercules; (iv) Amendment to Loan Agreement dated as of July 4, 2014 by and among Ultura, Inc., the Debtors, certain other affiliates of the Debtors and Hercules; and (v)

Second Amendment to Loan Agreement dated as of August 25, 2014 by and among Ultura, Inc., the Debtors, certain other affiliates of the Debtors and UAC, and all documents related thereto.

## ARTICLE 3
### SETTLEMENT CONSIDERATION AND COMPROMISE

Section 3.01.  *Settlement and Compromise.*  Subject to and expressly conditioned upon the entry by the Bankruptcy Court of the Settlement Order approving this Agreement as provided in Article 4 and the occurrence of the Effective Date, this Agreement settles and resolves all disputes among the Parties.  Except as the Parties may otherwise agree, all provisions of this Agreement and the agreements that are Exhibits hereto are central, non-severable terms of this Agreement including, but not limited to, the sale of the Oceanside Assets to UAC pursuant to the terms of the Oceanside APA.

Section 3.02.  *Allowed Bankruptcy Claim.*  UAC shall have an allowed secured claim against each of Ultura Oceanside and Ultura LA in their respective Bankruptcy Cases in the full amount of the UAC Claim, which shall not be subject to offset, recoupment, deduction, counterclaim or objection, of any kind or nature, by any party (the "Allowed Secured Claim").  The Allowed Secured Claim shall be treated in accordance with the terms and conditions of this Agreement.

Section 3.03.  *Settlement Consideration.*

(a)    Payment to the Debtors' Estates.  In partial consideration of the settlement among the Parties, on the Effective Date UAC shall pay the aggregate sum of $700,000 (the "Cash Consideration") to the UCC Winddown Account (as defined below) and assume all known undisputed trade claims of Ultura  Oceanside and Ultura LA as set forth herein.

(b)    UCC Winddown Account.  UAC shall pay the Cash Consideration to counsel for the Committee to be held in a client trust account (the "UCC Winddown Account") which shall be used for the payment of: (a) allowed administrative and priority claims in the Debtors' cases (including, but not  limited to, the allowed professional fees and expenses of the attorneys and financial advisors of the Committee, but excluding the Winddown Costs (as defined below) and (b) holders of allowed general unsecured claims against either of the Debtors on a *pro rata* basis.  In the event that there are funds remaining in the UCC Winddown Account after payment of  administrative, priority and general unsecured claims[1] (exclusive of any Winddown Costs), then any residual (up to $250,000) shall be paid to Dr. Rohrer on account of his asserted claims against Ultura LA.

(c)    Dismissal of Swiss Litigation.  Upon payment to Dr. Rohrer of the Rohrer Payment as defined in letter (f) hereunder, Dr. Rohrer and Ultura (Switzerland) GmbH (formerly APT-Rochem Holdings GmbH) shall jointly and consentantly apply to the district court of Zurich (Bezirksgericht Zürich) to terminate the court proceedings in the file No. CG13082

---

[1] To the extent that the Committee incurs professional fees in connection with the resolution of general unsecured claims, those fees will be paid from the UCC Winddown Account prior to the distribution to general unsecured creditors on a *pro rata* basis.

4

pursuant to an out of court settlement (Abschreibung zufolge Vergleichs). The litigants shall pay the court fees in equal parts and bear their own costs and attorney's fees in the subject matter and apply for a respective decision of the court. The litigants shall execute and file a dismissal of the court proceedings in the form attached hereto as <u>Exhibit I</u>.

        (d)     <u>Assumption of Liabilities</u>. On the Effective Date, UAC shall assume those trade creditor claims, as set forth on Schedule 3 attached hereto and incorporated herein by reference, in the amounts not to exceed in the aggregate those amounts set forth on Schedule 3.

        (e)     <u>Ultura LA</u>. The assets of Ultura LA are not sold to UAC. All of Ultura LA's assets shall remain with the Ultura LA bankruptcy estate for distribution to its creditors.

        (f)     <u>Payment to Rohrer and Release of Claims by Rohrer and the Rohrer Related Entities</u>. UAC shall, as of the Effective Date, cause a payment of $2,250,000 to be made to Rohrer (the "<u>Rohrer Payment</u>"). The Rohrer Payment shall be made by wire transfer. The Rohrer Payment shall be in full and complete satisfaction of any and all claims that Rohrer or the Rohrer Related Entities have against the other Parties to this Agreement, whether known or unknown, of every kind and description whatsoever, specifically including but not limited to Rohrer's demand for €2,238,661.67 under the Share Purchase Agreements related to German taxes. Additionally, Rohrer and the Rohrer Related Entities forever release, discharge, waive and abandon any and all claims, whether direct or representative, rights, demands, suits, matters, liens, mortgages, security interests, pledges, encumbrances, privileges, priorities, issues or causes of action, whether known or unknown, whether based on international, federal, state, or local statutory or common law, rule or regulation, by contract or in equity, and whether directly, representatively or in any other capacity, that it may have as of the date of the entry of the Settlement Order against the Releasing Parties or the respective properties or assets. Upon the receipt of the Rohrer Payment, Rohrer and the Rohrer Related Entities shall execute and deliver to the Parties an acknowledgement of satisfaction in the form attached hereto as <u>Exhibit F</u> acknowledging the full and complete satisfaction of all claims against the Debtors, Rochem AG and the Ultura Related Entities including, but not limited to, those obligations arising under the Seller Notes and the Share Purchase Agreements. Notwithstanding anything to the contrary herein, the undisputed trade claim of Romaco BV against Ultura LA set forth on Schedule 3 is not released and shall be assumed by UAC pursuant to Section 3.03(d) hereof.

    Section 3.04.   <u>*Funding of the Debtors' Estates*</u>.

        (a)     <u>Final Order for Use of Cash Collateral</u>. Each of the Debtors, UAC and the UCC shall support entry of a Final Order approving the Cash Collateral Motion in the form attached hereto as <u>Exhibit G</u> and incorporated herein by reference which Cash Collateral Motion shall fund Ultura Oceanside's ordinary course expenses and charges incurred post-petition and prior to the closing of the sale contemplated by the Oceanside APA pursuant to a mutually agreeable budget.

        (b)     <u>Advance by UAC of Winddown Costs</u>. Attached hereto as <u>Exhibit H</u> and incorporated herein by reference is a schedule detailing the winddown costs and expenses projected to be incurred by the Debtors in winding down and otherwise closing the Chapter 11 Cases (the "<u>Winddown Costs</u>") (the "<u>Winddown Amount</u>") to Ultura Oceanside and Ultura LA

5

(allocated in the amounts as set forth on Exhibit D) to be held by the Debtors' counsel in a separate interest bearing account (the "Winddown Fund"). The Winddown Amount shall be used by the Debtors to pay the amounts incurred by the Debtors in administering and closing the Chapter 11 Cases. Other than the advance of the Windddown Amount neither UAC nor True North nor any affiliated entities thereof shall be obligated to advance any further funds to the Debtors or the bankruptcy estates for the payment of the Winddown Costs. Upon conclusion or dismissal of the Chapter 11 Cases any amounts remaining in the Winddown Fund after payment of those Winddown Costs set forth on Exhibit H shall be promptly be repaid to UAC.

Section 3.05. *Sale of Assets of the Debtors*.

(a)     On the date of the filing of the Settlement Motion, as described herein, the Debtors shall also file the Sale Motion pursuant to which Ultura Oceanside shall sell the Oceanside assets to UAC in accordance with the terms of the Ultura Oceanside APA, pursuant to a private sale, not subject to any further counteroffers nor an auction.

(b)     As partial consideration for the purchase of the Oceanside Assets and in accordance with the Oceanside APA, (i) UAC agrees to (A) assume those trade creditor claims, as set forth on Schedule 3 attached hereto and incorporated herein by reference, in the amounts not to exceed in the aggregate those amounts set forth on Schedule 3, and (B) credit bid a portion of its Allowed Secured Claim, and (ii) the Cash Consideration will be applied against the purchase price.

Section 3.06. *Release Among the Parties*. Except as otherwise provided in this Agreement, effective upon satisfaction of the contingencies set forth in Section 4.01 below and upon the Effective Date, the Parties to this Agreement, each on behalf of itself, and each of its present and former successors, transferees, partners, principals, officers, directors, employees, agents, and attorneys (collectively the "Releasing Parties"), forever releases, discharges, waives and abandons any and all claims, whether direct or representative, rights, demands, suits, matters, liens, mortgages, security interests, pledges, encumbrances, privileges, priorities, issues or causes of action, whether known or unknown, whether based on international, federal, state, or local statutory or common law, rule or regulation, by contract or in equity, and whether directly, representatively or in any other capacity, that it may have as of the date of the entry of the Settlement Order against any of the other Releasing Parties or the respective properties or assets, arising from, in any way based upon, or in any way related to the following: the negotiation of or entering into this Agreement; the UAC Claim; the UAC Loan Documents; the Share Purchase Agreements; the Seller Notes; the Exchange Note Documents; all contractual arrangements and relationships by and among Rohrer and the Rohrer Related Entities and the other Parties (collectively, the "Released Claims"). For the purposes of this Section 3.06, notwithstanding the foregoing, the Released Claims shall not include (i) any claims arising under, brought under or to enforce the terms of this Agreement; (ii) the claims of UAC against Ultura Oceanside relating to the Allowed Secured Claim solely for the purposes of credit bidding a portion of the Allowed Secured Claim against the purchase price provided for in the Oceanside APA, provided that any portion of the Allowed Secured Claim not used for the credit bid shall be deemed fully and irrevocably released solely as to each of the Debtors; or (iii) the claims of UAC and True North against Ultura and the other obligated parties (other than the Debtors) arising under or related to the Exchange Note Documents and the UAC Loan Documents; or (iv) any claims of Ultura and

6

the Ultura Related Entities that they may have with respect to their officers, directors, principals, employees, agents, professionals and/or attorneys who were not serving in those positions as of the Petition Date, all of which claims are specifically and expressly reserved and preserved, provided however, that any such claims against the Rohrer Related Entities are not reserved and preserved hereby.

Section 3.07. *Release Of Debtors' Current Directors and Officers*. Except as otherwise provided in this Agreement, effective upon satisfaction of the contingencies set forth in Section 4.01 below and upon the Effective Date, the Releasing Parties forever release, discharge, waive and abandon any and all claims, (whether direct, derivative, representative), rights, demands, suits, matters, liens, mortgages, security interests, pledges, encumbrances, privileges, priorities, issues or causes of action, whether known or unknown, whether based on international, federal, state, or local statutory or common law, rule or regulation, by contract or in equity, and whether directly, derivatively, representatively or in any other capacity, that it may have as of the date of the entry of the Settlement Order against any of the Debtors' current officers, directors, principals, employees, agents, professionals and/or attorneys, of any kind or nature whatsoever, whether known or unknown.

Section 3.08. *California Civil Code Section 1542 Waiver*. The releases given in Section 3.03(f), Section 3.06, and 3.07 above, under are intended to shall operate as general releases. Each of the Parties has read and fully understands the provisions of California Civil Code section 1542 which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

Understanding the language of California Civil Code section 1542 and being fully apprised of the legal import of such statute, each of the Releasing Parties does expressly waive any and all rights and/or remedies provided by such statute should this statute be deemed to apply to the matters released herein. Each of the Releasing Parties expressly acknowledges that they may in the future discover facts in addition to or different from those they now know or believe to be true. Nevertheless, each of the Releasing Parties fully, finally, and forever releases any and all claims whether or not hidden or excluded, known or unknown, without regard to the subsequent discovery or existence of different or additional facts.

Section 3.09. Limited Scope of Releases. For the avoidance of doubt, ~~the release in Section~~ nothing in this Settlement Agreement or the releases in sections 3.06 and 3.07 hereof is ~~not~~ intended to release or have any effect on claims held by persons or entities which are not Parties to this agreement including the constituent members of the Committee who are not parties hereto.

7

Section 3.10.  *Execution of Additional Documents*,  The Parties agree, upon the Effective Date, that they shall each execute such additional documents as is reasonably necessary to effectuate the terms of this Agreement.  Without limiting the foregoing, upon the Effective Date, the Parties shall cause to be executed and filed a ~~dismisal~~ dismissal of the Swiss litigation as described in Section 3.03(c) in the form attached hereto as Exhibit I.

## ARTICLE 4
### SETTLEMENT ORDER

Section 4.01.  *Conditions Precedent*.  The effectiveness of this Agreement shall be conditioned. upon the entry by the Bankruptcy Court of the Settlement Order and Sale Order, the satisfaction of the conditions stated herein, and the occurrence of the Effective Date.  The following conditions must be satisfied prior to the occurrence of the Effective Date:

      (a)    Entry of the Sale Order on or before December 4, 2014 approving the sale of the Oceanside Assets to UAC or its designee in accordance with the terms and conditions of the Oceanside APA.

      (b)    Entry of the Settlement Order on or before December 4, 2014.

      (c)    Entry of a Final order approving the Cash Collateral Motion on or before December 4, 2014, with such Final order being in form and substance acceptable to UAC.

      (d)    Each of the conditions precedent contained in the Oceanside APA shall have been satisfied in accordance with the terms and conditions therein.

      (e)    Consummation of the sale of the Oceanside Assets to UAC or its designee in accordance with the terms and conditions of the Oceanside APA on or before December 12, 2014.

      (f)    Upon the entry of the Settlement Order, the Releases contained in Section 3.06 hereof shall be binding and enforceable against the Parties.

Section 4.02.  *Settlement Order and Sale Order Findings*.  Unless otherwise agreed in writing by the Parties, the Settlement Order and Sale Order shall, at a minimum, approve the terms of this Agreement and the sale of the Oceanside Assets to UAC, and shall contain, in substance, the following findings and/or orders:

      (a)    The manner in which notice of the Settlement Motion and Sale Motion were provided to all parties entitled to such notice was adequate, appropriate, reasonable and sufficient for all purposes and is approved;

      (b)    The compromises and settlement set forth in this Agreement are fair and reasonable to, and are in the best interest of, the Debtors and their creditors;

      (c)    The Settlement Motion is approved;

      (d)    The Sale Motion is approved;

(e)     The Settlement Order and Agreement shall be binding on the Debtors, UAC, True North, Rohrer, the Rohrer Related Parties, Ultura, and Ultura Related Entities;

(f)     A finding under Section 363(m) of the Bankruptcy Code that UAC purchased the Oceanside Assets in good faith, such sale is free and clear of liens, claims, encumbrances and interests (except for those claims expressly assumed in the Ultura Oceanside APA) of any party, and the transfer of the Oceanside Assets to UAC for the consideration set forth in the Oceanside APA represents fair consideration and reasonably equivalent value.

(g)     Each of the Parties hereto is authorized to enter into such other agreements documents as are necessary to effectuate the settlement to which it is a party;

(h)     The releases contained in this Agreements are approved and shall be effective as of the Effective Date; and

(i)     Upon the Effective Date, each of the Releasing Parties shall be deemed to have released and to be prevented from asserting, pursuing or prosecuting in any manner and in any forum any and all Released Claims against any of the Releasing Parties including, but not limited to, claims arising from the negotiation of or entry into this Agreement, subject to the terms contained herein.

Section 4.03.  *Support for Settlement and Sales*.  From and after the date of the execution of this Agreement, each of the Parties shall support the approval by the Bankruptcy Court of the settlement and compromise as set forth in this Agreement, the proposed sale to UAC in accordance with the terms and conditions of the Sale Motion and the Oceanside APA and the entry of the Final order approving the Cash Collateral Motion.

Section 4.04.  *Denial of Settlement Motion for Failure to Satisfy the Conditions Precedent*.  If  (i) the Bankruptcy Court shall deny the Settlement Motion or refuse to enter the Settlement Order in a form acceptable to the Parties, (ii) the Settlement Order is not entered by December 4, 2014, (iii) the Sale Order is not entered on or before December 4, 2014 in form and substance acceptable to UAC, or (iv) the Effective Date does not occur on or before December 22, 2014, then this Agreement shall be null and void and all Parties shall be released from their obligations hereunder and shall be returned to their respective legal positions as of the time immediately prior to execution of this Agreement.  Provided that the Parties have used good faith efforts to seek the entry of such Settlement Order and the Sale Order and to support the entry of the Settlement Order and the Sale Order, then no Party shall have any liability to any other Party and shall be deemed to have waived the right to assert any claim on account of the inability to obtain entry of the Settlement Order or the Sale Order.

ARTICLE 5
REPRESENTATIONS

Section 5.01.  Each of the Parties other than the Debtors represent and warrant as of the Effective Date that it has been duly authorized to execute and deliver this Agreement and any other agreements contemplated by this Agreement to which it is or will be a party, and, assuming proper authorization, execution and delivery by the designated counterparties to such agreements, and based upon entry of the Settlement Order and the provisions thereof as

9

contemplated herein, this Agreement shall constitute, and the other agreements contemplated by this Agreement to which it is or shall be a party shall constitute, the legal, valid and binding obligation of each such Party, enforceable against each such Party in accordance with their terms, except as the enforceability thereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights and remedies of creditors. Each of the foregoing parties further represent and warrant that, as of the date hereof and the Effective Date, it is the sole and lawful owner of all right, title and interest in and to all of the claims and other interests contemplated to be released by it pursuant to this Agreement. It has not assigned, transferred or otherwise disposed of any such claim or interest or portion thereof that it has or ever had, to any person, including any of its affiliates, in any manner, including by way of operation of law or otherwise.

Section 5.02. Each of the Debtors represent and warrant as of the Effective Date that it has been duly authorized to execute this Agreement and any other agreements contemplated by this Agreement to which it is or will be a party, and, assuming proper authorization, execution and delivery by the designated counterparties to such agreements, and based upon entry of the Settlement Order and the provisions thereof as contemplated herein, this Agreement constitutes, and the other agreements contemplated by this Agreement to which it is or will be a party will constitute, the legal, valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms except as the enforceability thereof may be limited, in proceedings other than the present Bankruptcy Cases, by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the rights and remedies of creditors. Each Debtor further represents and warrants to the other Parties that it is the sole and lawful owner of all right, title and interest in and to all of the claims contemplated to be released by it pursuant to this Agreement. It has not assigned, transferred or otherwise disposed of any such claim or interest or portion thereof that it has or ever had, to any person in any manner, including by way of operation of law or otherwise.

Section 5.03. _Cooperation_. UAC shall reasonably cooperate with the Debtors and the Committee in connection with the wind down of the bankruptcy estates as provided in Section 3.16 of the Oceanside APA.

ARTICLE 6
MISCELLANEOUS

Section 6.01. _Notices_. All notices and other communications under this Agreement, shall be deemed duly given (a) when delivered personally or by prepaid overnight courier, with a record of receipt, (b) when received, if mailed by certified mail, return receipt requested, or (c) the day of transmission, if sent by facsimile to the following facsimile numbers or by electronic mail to the following e-mail addresses, during regular business hours or the day after transmission, if sent after regular business hours (with a copy promptly sent by prepaid overnight courier with record of receipt or by certified mail, return receipt requested), to the Parties at the following addresses or e-mail addresses (or to such other address, facsimile number or e-mail address as a Party may have specified by notice given to the other Parties pursuant to this provision):

10

In the case of the Debtors:

Grant Lyon
Interim Chief Executive Officer
Ultura (Oceanside) Inc.
Ultura LA Inc.
57 West 57th Street
New York, NY 10019

With a copy to:

Jeffrey N. Pomerantz, Esq.
Debra I. Grassgreen, Esq.
Pachulski, Stang, Ziehl & Jones LLP
10100 Santa Monica Boulevard
13th Floor
Los Angeles, CA 90067-4003

If to UAC and True North Partners:

Michael J. Ahearn
Matthew S. Ahearn
True North Venture Partners, L.P.
205 N. Michigan Avenue
Chicago, IL 60601

With a copy to:

William W. Kannel, Esq.
Daniel S. Bleck, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111

If to UCC:

Andrew Sherman, Esq.
Boris I. Mankovetskiy, Esq.
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102

11

<u>If to Ultura, Inc.</u>

Michael W. Carmel
Chair, Restructuring Committee
80 E. Columbus Ave.
Phoenix, AZ 85012
Michael@mcarmellaw.com

<u>With a copy to</u>:

Thomas J. Salerno, Esq.
Gordon Silver
One East Washington Street
Suite 400
Phoenix, AZ 85004
tsalerno@gordonsilver.com

<u>If to Rohrer or the Rohrer Related Entities</u>:

Michael Busenkell, Esq.
Gellert Scali Busenkell & Brown, LLC
913 Market Street, 10th Floor
Wilmington, DE 19801

<u>If to Rochem AG</u>:

Ted Gavin
Gavin Solomonese
919 N. Market Street, Suite 600
Wilmington, DE 19801

<u>With a copy to</u>:

Teresa Currier, Esq.
Saul Ewing LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801


Section 6.02. *No Consequential or Punitive Damages.* The Parties shall only be liable hereunder for direct or compensatory damages. No Party shall, under any circumstance, be liable hereunder to any other Party for any indirect, consequential, exemplary, special, incidental, punitive or moral damages or lost revenue, lost income, lost profits, cost of capital or loss of business reputation or opportunity claimed by such other Party under the terms of or due to any breach of this Agreement.

12

Section 6.03. *Further Assurances*. Each of the Parties hereto agrees to promptly execute such additional documents or instruments to the extent such additional documents or instruments do not conflict with or are not inconsistent with the terms of this Agreement, as are necessary or desirable to evidence the settlements, releases and other transactions set forth in this Agreement. From time to time, as and when requested by a party hereto, any other party hereto shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other action (subject to any limitations set forth in this Agreement), as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by this Agreement, all at the sole cost and expense of the requesting party.

Section 6.04. *Disputes*. As of the Effective Date, except as otherwise provided for in this Agreement and to enforce the Parties' obligations hereunder, each Party agrees that it shall not commence or proceed with any litigation against any other Party related to the subject matter of this Agreement, nor shall it take any action inconsistent with the terms of this Agreement. The Parties hereto agree and consent to the exclusive jurisdiction of Bankruptcy Court to hear claims arising from the enforcement of this Agreement, the other agreements contemplated herein, the Settlement Order and the Sale Order, so long as Ultura Oceanside's bankruptcy shall remain pending. If such bankruptcy case shall no longer be pending, then jurisdiction shall be in both the state and federal courts located within the State of Delaware.

Section 6.05. *No Concessions or Admissions*. It is expressly understood that no Party to this Agreement concedes any liability of any kind whatsoever and that this settlement is made as a compromise and voluntary agreement in order to dispose of matters of contention and possible contention between the Parties hereto. All negotiations, proceedings, agreements, documents and statements made in connection with this Agreement shall not be deemed or construed to be evidence or an admission by any party of any act, matter or proposition and shall not be used in any manner or for any purpose in any action or proceeding.

Section 6.06. *No Inducement; Construction*. Each of the Parties hereby states to the others that except as expressly set forth herein, no one has made any representations of any kind to induce them to enter into this Agreement, and that it was entered into freely because they believed it to be in their best interests. This Agreement shall be deemed drafted by all Parties hereto and any ambiguity herein shall not be construed against any party solely by virtue of its participation in the drafting process. Each of the Parties has had advice of counsel of its own choosing in connection with this Agreement.

Section 6.07. *Amendment*. No variation or amendment of this Agreement shall be valid unless it is in writing and signed by or on behalf of all Parties to this Agreement.

Section 6.08. *Waivers*. No failure or delay by any party in exercising any right or remedy provided by law under or pursuant to this Agreement shall impair such right or remedy or be construed as a waiver or variation of it or preclude its exercise at any subsequent time, and no single or partial exercise of any such right or remedy shall preclude any other or further exercise of it or the exercise of any other right or remedy.

13

Section 6.09. *Counterparts*. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.

Section 6.10. *Governing Law*. This Agreement shall be interpreted, construed and governed according to the laws of the State of Delaware without regard to its conflicts of laws rules.

Section 6.11. *Acknowledgments*. The Parties acknowledge that this Agreement is being entered into in good faith, is the product of arms-length negotiations, and that good and sufficient consideration has been provided for all of the obligations set forth herein.

Section 6.12. *Binding Effect*. This Agreement shall be binding upon the Parties, their successors, assigns, and/or transferees.

Section 6.13. *Captions and Headings*. The Article and Section captions and the headings set forth herein are for reference purposes only, and shall not in any way affect the meaning or interpretation of this Agreement

Section 6.14. *Specific Performance*. The Parties acknowledge and agree that a breach of the provisions of this Agreement by any Party would cause irreparable damage to the other Parties and that such other Parties would not have an adequate remedy at law for such damage. Therefore, the obligations of the Parties set forth in this Agreement shall be enforceable by a decree of specific performance issued by any court of competent jurisdiction, and appropriate injunctive relief may be applied for and granted in connection therewith. Such remedies shall, however, be cumulative and not exclusive and shall be in addition to any other remedies that the Parties may have under this Agreement or otherwise.

Section 6.15. *No Third Party Beneficiary*. Except as expressly provided herein, no other entity is intended to be granted third party beneficiary status under this Agreement.

Section 6.16. *Non-Severability*. Except as all Parties may otherwise agree in writing, all provisions of this Agreement are essential, non-severable terms of this Agreement.

Section 6.17. *Prevailing Parties*. If any Party commences an action against another Party to enforce the terms of this Agreement or the Settlement Order, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs, whether or not such action is brought to judgment and whether incurred before or after the filing of any such action, and a Party's right to the foregoing shall not merge with but shall survive the entry of judgment.

Section 6.18. *Acceptance of Facsimile or Electronic Mail Signatures*. Delivery of an executed signature page of this Agreement by facsimile transmission or electronic mail (in pdf or compatible format) shall be as effective as delivery of a manually executed counterpart hereof.

[Remainder of Page Intentionally Left Blank]

14

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their respective authorized officers as of the date first written above.

ULTURA (OCEANSIDE) INC.

By:_____
Print Name:_____
Title:_____


ULTURA (LA) INC.

By:_____
Print Name:_____
Title:_____


OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By:_____
Print Name:_____
Title:_____


UAC FINANCE, INC.

By:_____
Print Name:_____
Title:_____


TRUE NORTH VENTURES PARTNERS, L.P.

By its General Partner

Print Name:_____
Title:_____

15

DR. HANS J. ROHRER


_____

*Hans J. Rohrer*

ULTURA, INC.


By:_____
Print Name:_____
Title:_____


ROCHEM AG


By:_____
Print Name:_____
Title:_____

THOMAS BOVE


_____

*Thomas Bove*

FLUID SEPARATION SYSTEMS SA


By:_____
Print Name:_____
Title:_____


WILHELM HEINE


_____

*Wilhelm Heine*

16

ROCHEM GROUP AG


By:_____
Print Name:_____
Title:_____


ROCHEM TECHNICAL SERVICES AG


By:_____
Print Name:_____
Title:_____

ROCHEM TECHNICAL SERVICE (EUROPE) LTD.


By:_____
Print Name:_____
Title:_____


R.T.S. ROCHEM TECHNICAL SERVICES GMBH


By:_____
Print Name:_____
Title:_____

ROMACO B.V.


By:_____
Print Name:_____
Title:_____

17

ULTURA INC.


By:_____
Print Name:_____
Title:_____


ULTURA (SWITZERLAND) GMBH


By:_____
Print Name:_____
Title:_____


ULTURA LIMITED


By:_____
Print Name:_____
Title:_____


ULTURA SRL


By:_____
Print Name:_____
Title:_____


ULTURA GMBH


By:_____
Print Name:_____
Title:_____


ULTURA SALES GMBH


By:_____
Print Name:_____

18

Title:_____

ULTURA RO PROPERTY GMBH


By:_____
Print Name:_____
Title:_____

ULTURA LLC
By its Sole Member, Ultura Inc.

By:_____
Print Name:_____
Title:_____


ULTURA ASIA PACIFIC PTE LIMITED
By its Sole Shareholder, Ultura Inc.

By:_____
Print Name:_____
Title:_____

19

SCHEDULE 1
(Rohrer Related Entities)

Thomas Bove
Fluid Separation Systems SA
Wilhelm Heine
Rochem Group AG
Rochem Technical Services AG
Rochem Technical Service (Europe) Ltd.
R.T.S. Rochem Technical Services GmbH
Hans J. Rohrer
Romaco B.V.

20

## SCHEDULE 2
(Ultura Related Entities)

Ultura Inc
Ultura (LA) Inc.
Ultura (Oceanside) Inc.
Ultura (Switzerland) GmbH
Ultura Limited
Ultura Srl
Ultura GmbH
Ultura Sales GmbH
Ultura RO Property GmbH
Rochem AG
Ultura LLC
Ultura Asia Pacific Pte Limited

~~DOCS_SF:86627.3~~
DOCS_SF:86627.5